## 21146

Jack E. SHAW and Marion C. Cannon, d/b/a partners under the common name and style of Shaw & Cannon Co., Appellants, v. AETNA CASUALTY & SURETY INSURANCE COMPANY, Respondent.

(262 S. E. (2d) 903)

*David B. Ward,* of *Horton, Drawdy, Hagins, Ward & Blakely,* Greenville, *for appellants.*

*W. H. Arnold* and *William M. Hagood, III,* of *Love, Thornton, Arnold & Thomason,* Greenville, *for respondent.*

February 11, 1980.

Littlejohn, Justice:

The plaintiffs, Jack E. Shaw and Marion C. Cannon, were partners who owned several motels, including the Hawaiian Holiday Motel at Myrtle Beach. The defendant, Aetna Casualty & Surety Insurance Company, issued its fire insurance policy dated as of November 21, 1974, covering the Hawaiian Holiday Motel. The motel burned on November 19, 1974. This action for declaratory judgment relief was brought by the partners in equity, asking the court to

reform the policy to make it effective as of November 18, 1974, in keeping with the intent of the parties; they also asked judgment in the amount of $65,229.75, representing loss of the building, its contents and loss of income.

The case came to be heard before the master-in-equity, who recommended reformation and money judgment in favor of the partners in the amount of $60,222.00, plus legal interest at the rate of 6% per annum from November 19, 1974, compounded annually, and attorney fees in the amount of $2,500.00. Aetna excepted to the master's report. The circuit judge rejected the recommendation of the master and dismissed the complaint, denying reformation. The partners have appealed.

The Hawaiian Holiday had previously been insured by Hartford Accident and Indemnity Insurance Company. Hartford cancelled coverage effective as of November 18, 1974, by sending notice to partner Marion C. Cannon at Myrtle Beach, where he lived. Shaw lived at Greenville. Although Cannon and Shaw were partners, their relationship was not a pleasant one. Shaw learned of the cancellation prior to the 18th, while at Myrtle Beach. He returned to Greenville where he made contact with Commercial Insurance Agency, operated by Lenton B. Puckett. Admittedly, Puckett was the general agent for Aetna, with full authority to bind the insurer. Shaw told Puckett of his need of continuing insurance, and at the same time told him that the partnership did not want double coverage. Puckett, on behalf of Aetna, agreed to write a policy to provide the coverage. Shaw was not sure of the exact effective date of Hartford's cancellation since the written notice was with Cannon in Myrtle Beach, so Puckett, whose Commercial Insurance Agency also represented Hartford, agreed to ascertain the effective date of the cancellation. He assigned the chore to Mrs. Black who worked in his office. Mrs. Black made contact with Hartford's regional representative and reached the erroneous conclusion that the cancellation date was November 21. Shaw was advised that coverage was being provided

as of that date. Obviously both Shaw and Puckett thought that continuous coverage was being provided.

The gravamen of the complaint is the contention on the part of the partners that it was the intent of the partnership and Commercial, and in turn Aetna to provide continuous coverage. The complaint submits that the policy did not include that which the parties had intended and agreed upon.

The gravamen of the answer is that the partners were negligent in failing to provide the correct date and that no right to reform exists. It submits that Aetna made no mistake.

Originally, the partners sued Hartford and Commercial, as well as Aetna, in tort. After a mistrial, Hartford and Commercial paid the partners $30,000.00 for a covenant not to sue and were dismissed from the action. The covenant included an agreement to return the $30,000.00 if the partners prevailed against Aetna. The case then proceeded to the trial now under consideration as an action for reformation only.

While the partners assert eleven questions for determination by this court, we are more inclined to agree with Aetna which submits that there is only one question independent of the additional sustaining grounds. That question, as taken from Aetna's brief, is as follows:

Was Shaw & Cannon entitled to have the effective date of Aetna's insurance policy changed from November 21, 1974 to November 18, 1974 under the equitable doctrine of reformation so that the policy would cover the fire damage to the motel which occurred on November 19, 1974?

Inasmuch as this is an equity action, tried by the master and acted upon by the circuit judge, wherein opposite findings were made, this court, in keeping with *Townes Associates, Ltd. v. City of Greenville*, 266 S. C. 81, 88, 221 S. E. 2d) 773 (1976), may make its independent determinations.

It has long been the law of this state that where a written contract does not conform to the intention of the parties, equity will reform the contract. The law of mutual mistake in contracts was stated in *Jumper v. Queen Mab Lumber Co.*, 115 S. C. 452, 106 S. E. 473 (1921), as follows:

"A contract may be reformed or rescinded, as the justice of the case may require, upon the ground of mistake, under these circumstances: (1) Where the mistake is mutual and is in reference to the facts, or supposed facts, upon which the contract is based; (2) where the mistake is mutual and consists in the omission or insertion of some material element affecting the subject-matter or the terms and stipulations of the contract, inconsistent with those of the parole agreement which necessarily preceded it; (3) where the mistake is not mutual, but unilateral, and has been induced by the fraud, deceit, misrepresentation, concealment, or imposition in any form of the party opposed in interest to the reformation or rescission, without negligence on the part of the party claiming the right; (4) where the mistake is not mutual, but unilateral, and is accompanied by very strong and extraordinary circumstances, showing imbecility or something which would make it a great wrong to enforce the agreement, sustained by competent testimony of the clearest kind." [Citations omitted.]

Both the master and the trial judge found as a matter of fact that the parties intended continuous coverage. The master said:

"It is clear from the record, and I so find that Commercial Insurance Agency, as agent of the Defendant, Aetna Casualty & Surety Company, intended and agreed to bind substitute coverage on the Hawaiian Holiday Motel in the same amount and of the same kind as had been carried by Hartford Insurance Company with the express understanding and agreement that the substitute coverage would be bound so that there would be continuous coverage, being clearly consistent with intentions of Plaintiffs."

The trial judge made the following finding:

"The significant facts are as follows: Upon learning of Hartford's intent to cancel fire insurance coverage on its Hawaiian Motel, the Plaintiffs requested Commercial Insurance Agency to provide Plaintiffs with continuous, no-gap coverage."

There can be no doubt but that the partners were seeking continuous coverage, and Commercial was willing to provide continuous coverage. Commercial being the agent of Aetna, its intent is that of the principal. Therefore, the mistake was mutual. Argument of counsel that the partners were negligent is of no real consequence. Normally, persons who make a mistake prior to seeking reformation of a contract have been negligent. It can just as logically be argued that Mrs. Black of the Commercial office was negligent in failing to acquire the correct cancellation date of the Hawaiian Holiday policy. The lower court appeared to be of the view that Mrs. Black was the agent for the partnership when she sought the cancellation date from Hartford. It is not important whose agent she was at that time. The controlling fact is that Puckett was agent of Aetna when he agreed to provide continuing coverage. We think the lower court erred in rejecting the report of the master, who found that there was a mutual mistake and recommended reformation.

The trial judge, having found that reformation was not proper, did not rule upon the recommendations of the master in allowing (1) compound interest, (2) attorneys' fees, and (3) in refusing to offset the $30,000.00 paid for a covenant not to sue. Inasmuch as the entire record is before us and we are at liberty under our rule to make our own findings of fact, we will address these issues so as to make additional hearings in the lower court unnecessary.

Interest should not be compounded, but should be paid in keeping with § 34-31-20, *Code of Laws of South Carolina* (1976), from November 19, 1974.

The record does not warrant a finding that Aetna's refusal to pay was "without reasonable cause or in bad faith," as contemplated by Code § 38-9-320, and accordingly attorney fees shall not be assessed.

We are of the opinion that the master correctly refused to allow an offset of the sum of $30,000.00 paid by Commercial and Hartford for the covenant not to sue. See *Bartholomew v. McCartha,* 255 S. C. 489, 179 S. E. (2d) 912 (1971).

The contention that $60,222.00 is not warranted by the proof, the contention that the partnership is not viable, and the contention that Hartford and Commercial are necessary parties are without merit. The case is remanded for entry of judgment in keeping with the views herein expressed.

Reversed.

LEWIS, C. J., NESS and GREGORY, JJ., and JOSEPH R. Moss, Acting Associate Justice, concur.