C. Wayne WILLIAMS, both individually, as a general partner in Pavilion Properties, a Limited Partnership, and as Administrator for the estate of Mary Rogers, Plaintiff–Appellant,

and

James M. Griffin, Special Master, Plaintiff,

v.

H. Arthur SANDMAN, individually and in his capacity as General and Limited Partners in Pavilion Properties, a Limited Partnership, Defendant–Appellee,

and

Thomas F. Walker, individually and in his capacity as General and Limited Partners in Pavilion Properties, a Limited Partnership, Defendant.

No. 96–2669.

United States Court of Appeals, Fourth Circuit.

Argued: June 5, 1997.

Decided: Aug. 10, 1999.

**ARGUED:** Palmer Freeman, Jr., Suggs & Kelly, Columbia, South Carolina, for Appellant. Marcus Angelo Manos, Nexsen, Pruet, Jacobs & Pollard, L.L.P., Columbia, South Carolina, for Appellee.

Before WIDENER and NIEMEYER, Circuit Judges, and MICHAEL, Senior United States District Judge for the Western District of Virginia, sitting by designation.

Affirmed by published opinion. Judge WIDENER wrote the opinion, in which Judge NIEMEYER and Senior Judge MICHAEL concurred.

## OPINION

WIDENER, Circuit Judge:

This case arises from the souring of a relationship between three business associates, H. Arthur Sandman, Thomas F. Walker, and C. Wayne Williams. On appeal, plaintiff Williams challenges an order of the United States District Court for the District of South Carolina refusing to set aside defendant Sandman's foreclosure on Williams' partnership interest in Columbia Hotel Associates and granting judgment as a matter of law to defendants Sandman and Walker on the conversion count of Williams' complaint. Finding no error, we affirm the district court's decision.

## I.

Williams, Sandman, and Walker were associated through four business entities that they primarily used to develop real estate in South Carolina. The first business, Columbia Hotel Associates Limited Partnership, developed and owns the Columbia Sheraton Hotel and Convention Center. Sandman, Walker, and Williams are equal general partners in Columbia Hotel Associates. Sandman, Walker, and Williams also own in equal parts all the outstanding shares of another business, Carolina Development Corporation. Carolina Development was formed to apply for and develop low-income housing limited partnerships.

In 1984, Williams and Walker conceived the idea for what would eventually become Pavilion Properties Limited Partnership (Pavilion), their third business. They planned to use government financing to construct a mixed residential and commercial property in which 20% of the units were designated as low-income housing. Sandman, Walker, and Williams designated themselves general partners in Pavilion. In obtaining the property for Pavilion, the partners also acquired additional property not needed for the project. They placed this property into Vista Properties Limited Partnership, a separate and fourth business for the trio, to free it from government restrictions controlling the Pavilion property.

In March 1987, South Carolina National Bank provided Pavilion a $500,000 letter of credit. Sandman, Walker, and Williams signed the letter of credit payment and security agreement as general partners in

Pavilion. Each partner also pledged his respective interest in Columbia Hotel Associates as collateral for the letter of credit. In addition, they executed a separate guaranty agreement as individuals.

After Pavilion defaulted on the letter of credit obligation, the bank sought the outstanding balance from the guarantors. Sandman paid the entire amount, and in exchange the bank assigned to Sandman the letter of credit, collateral assignments, and guaranty agreement. Only Walker complied when Sandman demanded one-third of the debt each from Williams and Walker. Sandman then foreclosed on Williams' interest in Columbia Hotel Association. Sandman himself purchased Williams' interest at a public sale, and the parties do not dispute that the sale was conducted in a commercially reasonable manner.

On account of the foreclosure and other problems in their business relationship, Williams filed this action against Sandman and Walker in a South Carolina state court. Williams' complaint stated nine state and federal causes of action against Sandman and Walker, both individually and in their capacity as partners in Pavilion. Williams also requested an accounting of the businesses forming a basis for the suit.

The case was removed to the United States District Court for the District of South Carolina at Sandman's instance in August, 1993. In October 1995, the district court appointed a special master to hold an accounting. After receiving the special master's report and holding a bench trial on July 11, 1996, the district court dismissed one of Williams' causes of action, granted summary judgment for the defendants as to six causes of action, and granted judgment as a matter of law for the defendants as to Williams' conversion and RICO claims.

■ Williams now asserts two assignments of error. First, he challenges the district court's refusal to set aside as improper Sandman's foreclosure on Williams' interest in Columbia Hotel Association. Next, Williams argues that the district court erroneously concluded that he had made an election of remedies through the accounting and therefore improperly entered judgment as a matter of law as to his conversion claim. On appeal from a bench trial, we may set aside findings of fact only if they are clearly erroneous. Fed. R.Civ.P. 52(a). We review the district court's conclusions of law *de novo*. *Resolution Trust Corp. v. Maplewood Invs.*, 31 F.3d 1276, 1281 n. 7 (4th Cir.1994).

## II.

■ The dispute over the propriety of Sandman's foreclosure on Williams' Columbia Hotel Associates interest centers on the characterization of the guaranty agreement executed by Sandman, Walker, and Williams. Williams contends that S.C.Code § 36–3–601(3)(a) (1976) is the controlling statute because the parties undertook primary liability for the letter of credit through the agreement. That statute frees all parties from liability when one of the makers of an instrument pays the instrument and takes an assignment thereof.[1] Williams accordingly argues that Sandman could not foreclose on his partnership interest because that collateral was freed of the letter of credit. Therefore, the argument goes, Sandman's only recourse would be an action for contribution, which would not be available until Pavilion's dissolution. Williams cites *Jeffcoat v. Morris*, 300 S.C. 526, 389 S.E.2d

---

**1.** The statute provides:

(3) The liability of all parties is discharged when any party who has himself no right of action or recourse on the instrument

    (a) reacquires the instrument in his own right; or

(b) is discharged under any provisions of this chapter, except as otherwise provided with respect to discharge for impairment of recourse or of collateral (§ 36–3–606).

S.C.Code § 36–3–601(3) (1976).

159 (S.C.Ct.App.1989), in support of his position.[2]

Conversely, the district court treated the guaranty agreement as a guaranty. The district court then relied on S.C.Code § 36–9–504(5)(Supp.1995), which provides:

A person who is liable to a secured party under a guaranty, indorsement, repurchase agreement, or the like and who receives a transfer of collateral from the secured party or is subrogated to his rights has thereafter the rights and duties of the secured party. This transfer of collateral is not a sale or disposition of the collateral under this chapter.

The court thus concluded that Sandman's payment of the letter of credit as a guarantor permitted him to foreclose on the letter's collateral, either under a transfer of collateral theory or under an equitable subrogation theory.

In his attempt to recharacterize the guaranty agreement as something other than a guaranty, Williams points to language in the document stating that it is "a guaranty of payment and not of collection" and that the liability undertaken shall "be a primary and not a secondary obligation and liability." J.A. at 347, 348. He reasons that these phrases render Sandman a party to the letter of credit agreement so that § 36–9–504(5) does not apply.

We disagree. First, the letter of credit payment and security agreement names Pavilion as the borrower, not Williams, Sandman, and Walker. Although they signed the letter of credit agreement, they did so only in their capacity as general partners in Pavilion and not as individuals. Thus, the face of the letter of credit is evidence which tends to refute Sandman's status as a co-maker.

Moreover, the South Carolina Supreme Court has held that the general rule in South Carolina "is that a guaranty of payment is an obligation separate and distinct from the original note. .... We adhere to the principle that the guaranty of payment and the promissory note are two separate contracts." *Citizens & Southern Nat'l Bank v. Lanford,* 313 S.C. 540, 443 S.E.2d 549, 551 (S.C.1994). In *Lanford,* the court determined that an individual who guarantees payment of a note is not a party to the note and cannot avail himself of defenses based on impairment of collateral. 443 S.E.2d at 551. This reasoning indicates that the rights and duties of guarantors, even those who guarantee payment, are distinct from the rights and duties of makers. Therefore, Williams' argument to the contrary based on the agreement's guaranty of payment language is without merit.

Williams also stipulated at trial that "Williams, Sandman, and Walker all personally guaranteed the Letter of Credit from South Carolina National Bank to Pavilion." There has been no change in this stipulation, nor does any reason appear to justify release from it. We thus believe the guaranty agreement constitutes a guaranty.

█ Another reason supports our opinion that § 36–3–601(3)(a) does not apply in this case. That Code section applies only to an "instrument." An instrument under § 36–3–102(1)(e) "means a negotiable instrument." Neither the letter of credit payment and security agreement, nor the letter of credit described in para. 1 thereof, nor the collateral assignments of partnership interest involved in this case are negotiable instruments. Even if *Jeffcoat* could be said to apply, that case concerned a negotiable instrument, a note, which this case does not.

---

**2.** The *Jeffcoat* court held that a maker's payment of a note extinguishes the note and discharges any co-makers' liability on the note and thus that the proper recourse against the co-makers would be an action for equitable contribution rather than subroga-

tion. 389 S.E.2d at 161. *Jeffcoat* has been specifically overruled at least to the extent that it prevents a mortgagor from being equitably subrogated to rights of a mortgagee. *United Carolina Bank v. Caroprop, Ltd.,* 316 S.C. 1, 446 S.E.2d 415, 417 (S.C.1994).

Finally, we have held under Virginia law that a letter of credit "simply was not a negotiable instrument." *Consolidated Aluminum Corp. v. Bank of Virginia,* 704 F.2d 136, 138, n. 6 (4th Cir.1983). We find *Consolidated Aluminum* persuasive.

We thus hold that the district court correctly applied § 36–9–504(5) of the South Carolina Code and correctly did not apply § 36–3–601(3)(a).

## III.

■ Williams next argues that the district court erred in granting judgment as a matter of law for the defendants on his conversion claim. Carolina Development Corporation received a $60,000 development fee in January, 1992 and again in January, 1993. Its past practice had been to distribute one-third of such proceeds to each of the three shareholders. In 1992 and 1993, however, Williams and Sandman agreed to loan the money to Pavilion to pay down Pavilion's indebtedness, which was guaranteed by Sandman, Walker, and Williams. Williams' complaint charges Sandman with wrongfully diverting the Carolina Development funds to Pavilion.[3]

On appeal, Williams asserts that the district court dismissed the conversion claim on the ground that Williams elected his remedy by proceeding with an accounting. Election of remedies, however, was not the basis for the district court's decision.

Rather, the court found that Williams failed to prove an essential element of conversion because he produced no evidence demonstrating that he had title to or a right to possession of the Carolina Development Corporation money. See *Crane v. Citicorp Nat'l Servs., Inc.,* 313 S.C. 70, 437 S.E.2d 50, 52 (S.C.1993).

In response, Williams contends that Sandman moved for judgment as a matter of law under Fed.R.Civ.P. 52(c) on an election of remedies theory. Yet the record indicates that Sandman presented two theories in support of his motion after Williams rested his case: 1) Williams' failure to prove he had a right to immediate possession of the Carolina Development money, a required element of conversion, and 2) Williams' election of remedy through the accounting. Contrary to Williams' assertions, the district court relied on the former theory as the basis for its ruling.

■ Moreover, the record supports the district court's conclusion. Although Williams claims he was entitled to immediate possession of the money because Carolina Development had declared it to be a dividend, he produced no evidence at trial demonstrating it had taken corporate action to that effect.[4] Instead, the evidence was that Sandman and Walker, representing two-thirds of Carolina Development's board of directors and two-thirds of its

3. Although the judgment was entered in favor of Sandman and Walker, Williams probably never actually asserted a conversion claim against Walker, only against Sandman.

4. Williams did produce a letter from Sandman to Williams and Walker stating that the $60,000 development fee Carolina Development Corporation received in 1992 was "immediately distributed by CDC" to be applied to Pavilion's letter of credit and that CDC would issue 1099 forms to each shareholder indicating "this distribution." R. Vol. 10A Pl.'s Ex. 24. At trial, Sandman explained that he was using the term "distribution" broadly and that after talking with CDC's accountant he realized the tax treatment was incorrect. Another letter from Sandman to Williams, which is dated prior to the 1992 and 1993

transactions complained of here, confirmed that Sandman had "threatened to take Williams' share" of the development fees and contribute it to Pavilion. R. Vol. 10A Pl.'s Ex 30a at 5. These two documents constitute the only evidence supporting Williams' claim that the money was a dividend. In this regard, we agree with the district judge's conclusion that the proof was insufficient to survive Sandman's Rule 52 motion. A minority shareholder's statements and threats are not corporate actions creating the right to a dividend.

While Williams' attorney argued orally that Williams received a 1099 form for the alleged 1992 dividend, at trial the parties apparently agreed that the amount on the 1099 and the development fees allegedly distributed are unrelated.

outstanding shares, decided to loan the corporate funds to Pavilion. Looking at the money's treatment on the corporation's books would probably have resolved the matter, yet nothing indicates that the books were ever considered or offered into evidence. In the absence of proof to the contrary, the district court properly concluded that Carolina Development never declared a dividend, giving Williams a legal right to the money. The court therefore correctly determined that Williams failed to prove an essential element of his conversion claim.

■ In the face of this evidence, Williams advances a technical basis for avoiding the district court's decision in this matter. The special master's report, without explanation, stated that "CDC declared $120,000 in dividends for 1991 and 1992." J.A. at 51. On June 20, 1996, the district court entered an order accepting the special master's report recommendation in all respects except as modified in the order. Because the district court's order did not explicitly reject the special master's finding with respect to the dividend, Williams now argues that the district court was bound by the special master's earlier characterization of the money as a dividend.

Williams' argument, however, ignores the procedural posture of the case on June 20. The order of that date dealt with a motion for partial summary judgment. It did not specifically address the Carolina Development funds' status as a dividend. After holding a bench trial on July 11, the district court found no evidence that a dividend was declared. Although the June 20 order recited acceptance of the special master's report, we are of opinion that the report at best was entitled to weight as evidence in light of the proof at trial. We add that Williams does not challenge the evidentiary support for the district court's decision.

When considered with the whole record in the case, we are of opinion that the holding of the district court in the orders entered by the district judge, that a dividend had not been declared, was not clearly erroneous; and the report of the magistrate judge, which found as a fact that a dividend had been declared, was clearly erroneous. F.R.C.P. 52 and 53.

Thus, the district court did not act improperly in modifying the master's findings to comport with the trial evidence.[5] Therefore, Williams' claim that the district court was obligated to treat the money as a dividend is baseless.

IV.

The judgment of the district court is accordingly

*AFFIRMED.*

---

5. We further note that the final judgment in the case, entered October 25, 1996, states that the district court accepts as modified the special master's report. We treat the modifica-

tions referred to as including any finding at variance with the final judgment of the district court.