**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

RENTOKIL, INCORPORATED - TROPICAL
PLANT SERVICES,
Plaintiff-Appellant,

v.

No. 98-2524

CREATIVE PLANTSCAPES,
INCORPORATED; MICHAEL MCCARTHY;
GARY MANGUM; BRETT STEVENS;
BELL NURSERIES, INCORPORATED,
Defendants-Appellees.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CA-98-160-PJM)

Argued: October 26, 1999

Decided: December 3, 1999

Before NIEMEYER, WILLIAMS, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Christopher "Kip" Schwartz, HOLLAND & KNIGHT,
L.L.P., Washington, D.C., for Appellant. Stanley James Reed,
LERCH, EARLY & BREWER, CHARTERED, Bethesda, Maryland,
for Appellees. **ON BRIEF:** Leo G. Rydzewski, HOLLAND &

KNIGHT, L.L.P., Washington, D.C., for Appellant. J. Bradford McCullough, Sheryl D. Hanley, LERCH, EARLY & BREWER, CHARTERED, Bethesda, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Rentokil, Inc. sued its former employees, Gary Mangum and Michael McCarthy, alleging a breach of non-competition clauses. After a bench trial the district court entered judgment for Mangum and McCarthy. Rentokil appeals, and we affirm.

I.

Rentokil provides interior landscaping services to commercial customers. In 1992 Rentokil paid $14.3 million for the stock of Creative Plantings, Inc., also an interior landscaping company. Robert and Shirley Mangum had been the owners of Creative Plantings, and their son, Gary Mangum, and son-in-law, Michael McCarthy, served as vice presidents. Following the acquisition, McCarthy and Mangum continued to work for Creative Plantings, which was now a part of Rentokil. Creative Plantings' store continued in space that Rentokil leased from Bell Nursery, which was also owned by Robert and Shirley Mangum.

At the time of the acquisition in 1992, Mangum and McCarthy signed employment and non-competition agreements with Rentokil. The 1992 Non-Competition Agreements contained the following paragraph:

>    5. <u>Relationship With Others</u>. The parties agree that the profitability and reputation of the Company depends on con-

2

tinued amicable relations with its suppliers and customers and [Mangum/McCarthy] agrees that he will not cause, request or advise any suppliers or customers of the company on the date hereof to curtail or cancel their business with the Company.

The 1992 Non-Competition Agreements also included provisions that prohibited Mangum and McCarthy from disclosing confidential information, engaging in competing business activities, and inducing Rentokil employees to join a competing business.

At the end of 1993 negotiations began for Mangum and McCarthy to become full-fledged Rentokil employees. The two signed new employment agreements in 1994. The new agreements contained non-competition provisions and an integration clause:

> 6) Post-Termination Restrictions on Disclosure and Competition: Employee agrees that he will not, directly or indirectly, and for whatever reasons:
>
> A) for a period of two (2) years from the date on which his employment terminates, divulge to any person or entity, or otherwise exploit for his own benefit or the benefit or another person or entity, any of the Company's confidential information, . . . or induce any employee of the Company to terminate employment with the Company in order for that employee to engage in any business or activity in competition with the Company; or
>
> B) for a period of one (1) year from the date on which his employment terminates, engage in any business activity or employment within the Territory (as defined herein) which is the same or substantially similar to work engaged in by him as an employee of the Company and which is competitive with the Business or the Company (as defined herein), without written consent of the Company, with the exception of the related Mangum business as defined in the Stock Purchase Agreement.
>
> * * *

3

12) <u>General</u>:

\* \* \*

    G) <u>Other Agreements</u> -- This Agreement supercedes all oral or written employment agreements between the company and/or its affiliates and the Employee. It constitutes the entire Agreement between the parties concerning employment and there are not other representations made other than those expressed here. The parties have read and understand the terms of this Agreement.

The new agreement did not contain language equivalent to that of paragraph five of the 1992 Non-Competition Agreement.

Mangum and McCarthy resigned from Rentokil in 1995 and 1996, respectively. They left Rentokil to work for Bell Nursery, which was not doing very well. Rentokil's Creative Plantings store was adjacent to Bell Nursery, and Rentokil continued to buy a substantial amount of plants and material from Bell Nursery. In 1997 Rentokil informed Mangum and McCarthy that it would be looking for new space to lease. In addition, in August of 1997 Rentokil subcontracted its exterior business to another company. The move and the subcontract together meant that Bell Nursery's business with Rentokil would evaporate.

With their nursery business in jeopardy, Mangum and McCarthy decided in late 1997 to get back into the interior landscaping business. After they began this effort, Rentokil sued them for, among other things, violating paragraph five of the 1992 Non-Competition Agreements by soliciting Rentokil's customers. The district court held a bench trial on September 4, 1998. The court decided that the 1994 Employment Agreements novated the 1992 Non-Competition Agreements and entered judgment for Mangum and McCarthy. Rentokil now appeals.

II.

A.

Rentokil argues that the district court erred when it decided that Mangum and McCarthy's 1994 Employment Agreements novated the

4

1992 Non-Competition Agreements in their entirety. The court's ruling meant that paragraph five of the 1992 agreements did not survive, and therefore Mangum and McCarthy would not be liable for any solicitation of Rentokil customers.

The law governing novations in Maryland is well settled. A novation "contains four essential requisites: (1) A previous valid obligation; (2) the agreement of all the parties to the new contract; (3) the validity of such new contract, and (4) the extinguishment of the old contract, by the substitution of the new one." I.W. Berman Properties v. Porter Bros., Inc., 344 A.2d 65, 70 (Md. 1975) (citations omitted), quoted in Holzman v. Fiola Blum, Inc., 726 A.2d 818, 830 (Md. Ct. Sp. App. 1999). The party asserting the novation must prove the parties' intent to substitute the new agreement for the old one. See Berman, 344 A.2d at 70. However, the intention need not be express: "the issue is whether the facts and circumstances. . . and the ensuing conduct of the parties, provide legally sufficient evidence of an intention to enter into a novation." Dahl v. Brunswick Corp., 356 A.2d 221, 228 (Md. 1976); see also Holzman, 726 A.2d at 830 (quoting Berman, 344 A.2d at 70); Leisner v. Finnerty , 250 A.2d 641, 645 (Md. 1969). Inconsistencies between the old and new contracts are helpful in analyzing the parties' intent. See Swift v. Allan, 128 A.2d 260, 263 (Md. 1957).

In its findings of fact, the district court first noted that during the negotiation of the 1994 agreements, Richard Cottrill, then president of Rentokil's Tropical Plant Services, made statements to the effect that "deals change, and that this was a changed deal, and that the new -- the new engagement was regulated by the `94 Agreement and not by anything else." Second, the court found that Rentokil's argument that the 1992 agreements still applied conflicted with letters sent by Mike Purcell, a human relations officer at Rentokil, to Mangum and McCarthy when they resigned. These letters, which warned Mangum and McCarthy of their post-employment obligations to Rentokil, only referred to the employment agreements and made no reference to the Non-Competition Agreements of 1992. Finally, the court found that it was Rentokil that had pushed for the new agreement in 1994 and not Mangum and McCarthy. These factual findings are not clearly erroneous. See Williams v. Sandman, 187 F.3d 379, 381 (4th Cir. 1999); Fed. R. Civ. P. 52(a).

5

The district court concluded as a matter of law that several inconsistencies indicated the parties' intention to substitute the 1994 Employment Agreements for the 1992 Non-Competition Agreements. Although the 1994 agreements do not contain a provision like paragraph five of the 1992 Non-Competition Agreements, the two sets of agreements do contain different time limits on using confidential information, on undertaking competitive business activities, and on inducing Rentokil's employees to join a competing business. In concluding that Rentokil intended to work a novation, the district court also relied on the integration clause in the 1994 Employment Agreements. After de novo review, we agree with the district court's legal conclusions. See Sandman, 187 F.3d at 381.

Together, these findings and conclusions are sufficient to support the district court's determination that there was a novation under Maryland law. The novation meant that Mangum and McCarthy were not liable to Rentokil, and the entry of judgment in their favor was proper.

B.

Rentokil raises a new theory on appeal: it contends that the district court erred by failing to find that Mangum and McCarthy made a judicial admission that the 1992 Non-Competition Agreements continued to govern after the 1994 Employment Agreements were signed. In a June 12, 1998, reply memorandum supporting their motion for a continuance, Mangum and McCarthy said that they "had written agreements that prevented them from competing with Rentokil for five years; plus an additional one-year after termination of their employment." Rentokil contends that the "five years" refers to a time limit on non-competition found in the 1992 Non-Competition Agreements and not in the 1994 Employment Agreements. Although Rentokil used the statement to cross-examine Mangum and McCarthy at trial about their intent, it did not ask the court to treat the statement as a binding judicial admission.

As a general rule, we will not consider issues raised for the first time on appeal. See, e.g., Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1227 (4th Cir. 1998); Muth v. United States, 1 F.3d 246, 250 (4th Cir. 1993). Rentokil never characterized Mangum and McCar-

6

thy's statement as a judicial admission in district court, and that court did not treat the statement as such. Accordingly, Rentokil has waived this argument because it did not raise it below.

Moreover, even if Rentokil had advanced a judicial admission theory in district court, that court would have had the discretion to reject it. See Coral v. Gonse, 330 F.2d 997, 998 n.1 (4th Cir. 1964) ("If the District Court, convinced that an honest mistake had been made, the original allegation was untrue and that justice required relief, it may, in its discretion, relieve the party of its otherwise binding consequence."); MacDonald v. General Motors Corp. , 110 F.3d 337, 340 (6th Cir. 1997) ("[C]onsiderations of fairness and the policy of encouraging judicial admissions require that trial judges be given broad discretion to relieve parties from the consequences of judicial admissions in appropriate cases.") (quoting United States v. Belcufine, 527 F.2d 941, 944 (1st Cir. 1975)). The statement was made in the context of asking for a continuance, not in the context of litigating the substantive issue, so there were ample grounds for not treating the statement as a binding admission. We decline to accord the statement any effect here.

The judgment of the district court is affirmed.

AFFIRMED

7