**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CHARLES J. PREZIOSO,
Plaintiff-Appellee,

v.                                                          No. 99-1675

CALHOUN THOMAS, JR.,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
Solomon Blatt, Jr., Senior District Judge.
(CA-97-1341-9-8)

Argued: March 3, 2000

Decided: April 25, 2000

Before WILKINS, NIEMEYER, and MICHAEL, Circuit Judges.

_____

Affirmed in part and certified in part to the South Carolina Supreme
Court by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** William Andrew Gowder, Jr., Andrew Kenneth Epting,
Jr., PRATT-THOMAS, PEARCE, EPTING & WALKER, P.A.,
Charleston, South Carolina, for Appellant. V.M. Manning Smith,
MOSS & KUHN, Beaufort, South Carolina, for Appellee. **ON
BRIEF:** Brian L. Boger, LAW OFFICES OF BRIAN BOGER,
Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Calhoun Thomas, Jr. appeals a district court judgment for compensatory and punitive damages in favor of Charles J. Prezioso in Prezioso's action for intentional infliction of emotional distress. Thomas, who died during the course of this suit,[1] contends that the evidence was insufficient to justify a verdict for Prezioso and that the district court erred in awarding punitive damages against Thomas' estate because South Carolina law does not allow for an award of punitive damages against a deceased tortfeasor's estate. We affirm the award of compensatory damages and certify the punitive damages question to the South Carolina Supreme Court.

I.

Viewed in the light most favorable to Prezioso, the evidence was as follows. Prezioso and Grandee Hardy became romantically involved in March 1994. During the next several months, the two developed a serious relationship and intended to marry on November 7. In late September 1994, Thomas sent Prezioso an anonymous letter. The envelope containing the letter also contained explicit photographs of Hardy engaged in sexual acts with an unidentified man. The letter demanded money and threatened that the sender would send the photos to other people unless he received the money. When Prezioso saw one of the photographs, he "[w]ent into shock," immediately went to the restroom, and vomited. J.A. 61. He was embarrassed, humiliated, and greatly concerned about who else might have received copies of the photographs of his fiancee. Shortly thereafter, Prezioso and Hardy postponed their wedding and sought assistance from law enforcement. In late November, Prezioso received another

_____

[1] This appeal is being pursued by Thomas' estate. For ease of reference, we refer to the judgment as having been appealed by Thomas.

2

anonymous letter from Thomas in which Thomas described a sex act that he claimed Hardy had performed. In the letter, Thomas demanded $5,000 in exchange for the sexually explicit photos of Hardy that he possessed.

Despite the disruption that Thomas' letters caused in Prezioso and Hardy's relationship, the two were married in August 1995.**2** The effects of Thomas' conduct lingered, however, causing significant discord between Prezioso and Hardy. Their marriage was a volatile one, marred by several violent disputes, and by May 1996 they had filed cross-suits for divorce. Although they reconciled later that year, at the time of trial they were separated, Hardy having sued Prezioso for divorce once again.

Prezioso filed this suit in South Carolina state court in January 1995 seeking actual and punitive damages against Thomas for intentional infliction of emotional distress and invasion of privacy. Thereafter, Thomas filed for bankruptcy under Chapter 11, resulting in the stay of any act to recover a claim against Thomas that arose prior to filing. See 11 U.S.C.A. § 362(a)(6) (West 1993 & Supp. 1999). Prezioso filed a proof of claim for $500,000 based on the allegations made in his complaint in the state court action. See id. § 501 (West 1993). He also filed a motion for relief from the automatic stay so that he could continue to prosecute his action. See id. § 362(f) (West 1993). His motion was granted, and the action subsequently was removed to United States District Court. See 28 U.S.C.A. § 1452(a) (West 1994); id. § 1334(b) (West 1993). Thomas died on April 17, 1997, and the personal representative of his estate continued the defense of this action.

At the outset of the bench trial that followed, the district court granted summary judgment to Thomas on the invasion of privacy claim and the action proceeded on the intentional infliction of emotional distress claim. Following the trial, on March 3, 1999, the district court awarded Prezioso $300,000 compensatory damages and $125,000 punitive damages.

_____

**2** Hardy took Prezioso's name when she married him, but for ease of reference, we refer to her as "Hardy" throughout this opinion.

3

II.

Thomas first challenges the finding of liability by the district court, maintaining that the evidence was insufficient to warrant a verdict in favor of Prezioso. South Carolina has adopted the liability rule stated in Restatement (Second) of Torts § 46(1) (1965), relating to intentional infliction of emotional distress, which states in relevant part that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." See Ford v. Hutson, 276 S.E.2d 776, 778 (S.C. 1981). To give rise to a cause of action, the defendant's conduct must be "so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community," and the distress inflicted must be so severe "that no reasonable man could be expected to endure it." Id. (internal quotation marks omitted). Whether a defendant's conduct is sufficiently extreme and outrageous, and whether the emotional distress suffered is sufficiently severe to justify imposition of liability, are questions for the factfinder if reasonable minds could disagree. See Andrews v. Piedmont Air Lines, 377 S.E.2d 127, 129 (S.C. Ct. App. 1989) (per curiam); Restatement (Second) of Torts § 46 cmt. j. On appeal from a bench trial, we review the findings of fact made by the district court for clear error and its legal conclusions de novo. See Williams v. Sandman, 187 F.3d 379, 381 (4th Cir. 1999).

Thomas contends that his actions were not outrageous as a matter of law because Prezioso was abusive to Hardy during their marriage, made an anonymous threatening telephone call to Thomas prior to ever receiving the photographs, threatened Hardy that he would show Thomas' sexually explicit pictures of Hardy to her daughter, and filmed himself having sex with Hardy during their marriage and threatened Hardy that he would show the resulting videotape to other people. We disagree. We note that Prezioso in his testimony disputed all of these allegations other than the claim that he placed the anonymous threatening telephone call, which he claimed he did because Thomas had been "harassing" Hardy. J.A. 78. In any event, Thomas' allegations, even if true, would not preclude a determination by a reasonable factfinder that Thomas' subjecting Prezioso to pictures of his fiancee performing sex acts on another man and blackmailing Prez-

4

ioso with the photographs were sufficiently extreme and outrageous to justify recovery. See Ford, 276 S.E.2d at 778.

Thomas next argues that his conduct was not sufficiently outrageous to justify liability against him for intentional infliction of emotional distress because "Prezioso had no right`not to know'" about Hardy's prior sexual activity and her posing for the photos. Brief of Appellant at 23. To the extent that Thomas maintains that the nonexistence of this "right not to know" demonstrates that Thomas' conduct was not sufficiently extreme and outrageous to justify the imposition of liability, we disagree. The outrageousness of Thomas' conduct lay not in the fact that Thomas revealed to Prezioso that Hardy had had sexual relations and posed for sexually explicit photos at some point in the past, but in his causing Prezioso actually to view photographs of his fiancee engaged in those sex acts with another man and his threatening to show the sexually explicit pictures to others.

Thomas next maintains that the evidence of his liability was insufficient because the only reasonable inference to be drawn from the record regarding his intent was that by his conduct he intended to harm only Hardy, not Prezioso. However, even assuming arguendo that Thomas is correct that that was the only reasonable inference to be drawn from the record, a plaintiff need not prove the infliction of emotional distress was intentional; mere recklessness is sufficient. See Ford, 276 S.E.2d at 778.

Finally, Thomas contends that the evidence was insufficient to justify a verdict for Prezioso because Prezioso failed to demonstrate that Thomas caused him to suffer emotional distress of such magnitude that no reasonable person could be expected to endure it. When viewed in the light most favorable to Prezioso, however, the evidence demonstrated that Thomas' conduct "devastated" Prezioso, causing him to postpone his wedding, and eventually "ruin[ing]" his relationship with Hardy once the two were married. J.A. 69, 74. We conclude that reasonable minds could disagree concerning whether the level of anguish suffered by Prezioso was sufficiently severe to sustain the cause of action. We therefore must affirm the factual finding of the district court on this point.

5

III.

Thomas next argues that the district court erred in awarding punitive damages against the estate of a deceased defendant, contending that the central purpose behind a punitive damage award in South Carolina--which Thomas argues is punishing the tortfeasor and deterring him from committing similar acts in the future--cannot be served once the tortfeasor is dead. Prezioso, on the other hand, maintains that South Carolina's wrongful death and survival statutes provide for recovery of punitive damages from a deceased tortfeasor's estate. See S.C. Code Ann. §§ 15-5-90, 15 51-10, 15-51-40 (Law. Co-op. 1976 & Supp. 1999). Prezioso also contends that punitive damage awards serve broader purposes in South Carolina than Thomas suggests and that some of those purposes would be advanced by allowing punitive damage awards against a deceased tortfeasor's estate. See Clark v. Cantrell, No. 25088, 2000 WL 282457, at *3 (S.C. Mar. 13, 2000) (identifying deterrence of similar future conduct by people other than the defendant and "compensation for the reckless or willful invasion of the plaintiff's private rights" as "important purposes" of punitive damages). The issue Thomas raises is one of first impression in South Carolina and one as to which there is no controlling authority. Accordingly, we certify to the South Carolina Supreme Court the following question: "In an action for intentional infliction of emotional distress, may punitive damages be awarded against the estate of a deceased tortfeasor?" See S.C. App. Ct. R. 228.

IV.

In sum, because the evidence in the record was sufficient to support an award of compensatory damages on Prezioso's claim for intentional infliction of emotional distress, we affirm that award. However, we certify to the South Carolina Supreme Court the question of whether punitive damages may be awarded against the estate

6

of a deceased tortfeasor in an action for intentional infliction of emotional distress.**3**

AFFIRMED IN PART AND CERTIFIED IN PART
TO THE SOUTH CAROLINA SUPREME COURT

_____

**3** Thomas has moved to supplement the joint appendix. His motion is granted.

7