**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

THE CADLE COMPANY, an Ohio
corporation,
<u>Plaintiff-Appellant,</u>

v.

No. 99-1908

BERKELEY PLAZA ASSOCIATES,
INCORPORATED; MICHAEL T. HALL &
ASSOCIATES, LIMITED, a Virginia
corporation; MICHAEL T. HALL,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-98-1128)

Argued: April 5, 2000

Decided: May 17, 2000

Before NIEMEYER, Circuit Judge, HAMILTON,
Senior Circuit Judge, and Roger J. MINER, Senior Circuit Judge
of the United States Court of Appeals for the Second Circuit,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Richard Anthony Lash, BUONASSISSI, HENNING,
CAMPBELL & MOFFET, P.C., Fairfax, Virginia, for Appellant.

Blair Duncan Howard, HOWARD, MORRISON & HOWARD, Warrenton, Virginia, for Appellees. **ON BRIEF:** Christopher A. Glaser, BUONASSISSI, HENNING, CAMPBELL & MOFFET, P.C., Fairfax, Virginia, for Appellant. Paul A. Morrison, HOWARD, MORRISON & HOWARD, Warrenton, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Cadle Company (Cadle) appeals from the district court's dismissal of its suit to recover disputed sums on a promissory note. The district court dismissed Cadle's suit following a bench trial for failing to comply with the applicable six-year statute of limitations. We affirm.

I

On August 17, 1988, Berkeley Plaza Associates, Inc. (Berkeley) signed a promissory note (the Note) payable to Madison National Bank in the amount of $900,000. The Note was secured by a Deed of Trust on a shopping center owned by Berkeley. The Note's maturity date was August 1, 1989, but Berkeley exercised an option to extend the maturity date until August 17, 1991. **1**

Prior to the August 17, 1991 maturity date, the Federal Deposit Insurance Corporation (FDIC) became the holder of the Note after Madison National Bank fell into receivership. Berkeley continued to make monthly installment payments of interest while the FDIC held the Note, but did not pay the principal balance when the Note matured. Throughout the time it possessed the Note, the FDIC repeat-

_____

**1** The Note required Berkeley to make monthly installment payments on the interest and a lump sum payment of the principal upon maturity.

2

edly warned Berkeley that the Note matured on August 17, 1991, and that Berkeley needed to obtain refinancing in order to resolve its indebtedness. In response to the FDIC's warnings, Berkeley requested extensions on payment of the Note's principal balance. Finally, on June 5, 1996, the FDIC sold the Note to Cadle for $351,541.

On June 13, 1996, Cadle contacted Berkeley's attorney, Robert Zelnick (Zelnick), and informed him that Cadle was the new holder of the Note. On June 27, 1996, Cadle sent Zelnick a letter estimating, based on its records, that Berkeley owed $934,606.90 on the Note, the principal balance of which was $875,740.51.[2] Included in Cadle's payoff figure was the principal balance, late fees for Berkeley's failure to pay the principal when the Note matured, default interest of an additional four (4%) percent for the months that Cadle believed Berkeley had been in default, and underpaid interest.[3] In response to Cadle's letter, Zelnick wrote a letter on behalf of Berkeley disputing all amounts above the principal balance of $875,740.51.

Throughout 1996 and 1997, Cadle and Berkeley continued to negotiate payment of the Note. On July 8, 1997, Zelnick wrote Cadle and stated that Berkeley had been attempting to arrange for alternate sources of financing and that it would be able to pay the Note on or about September 30, 1997. On August 17, 1997, the statute of limitations for suing on the Note expired.

The Note was not paid by September 30, 1997, but on November 17, 1997, Zelnick wrote a letter to Cadle informing it that Berkeley anticipated refinancing the loan by November 30, 1997. In this letter, Zelnick stated that Berkeley was prepared to pay Cadle the principal balance of $875,740.51 upon obtaining refinancing. In exchange for that payment, Berkeley demanded that Cadle release the Deed of Trust. In the same letter, Zelnick acknowledged that Berkeley owed

_____

[2] The reduced principal amount resulted from Berkeley's overpayments of interest to the FDIC. Accordingly, the FDIC credited those overpayments to the principal.

[3] Cadle claimed that Berkeley had been making monthly installment payments of interest at an interest rate lower than the rate mandated in the Note. The difference between the rate Berkeley paid and the rate Cadle asserts the Note mandated constitutes the underpaid interest.

3

Cadle the principal balance but specifically disputed any charges for underpaid interest, default interest, and late fees.

In response to Zelnick's letter, Cadle agreed to release the Deed of Trust in exchange for a payment of the principal balance and agreed to reserve for later litigation the disputes over underpaid interest, default interest, and late fees. Zelnick faxed a letter to Cadle confirming this agreement. Zelnick's letter expressly stated that neither party waived its rights to assert all legal defenses in the litigation over the disputed sums. Thereafter, in December 1997, Cadle released the Deed of Trust after Berkeley paid the principal sum of $875,740.51. On August 6, 1998, Cadle filed this suit to recover the disputed underpaid interest, default interest, and late fees. [4]

Cadle's complaint alleged that Berkeley owed $188,050.07.[5] In response to Cadle's complaint, Berkeley asserted, inter alia, that Cadle's claims were barred by the statute of limitations. Although acknowledging that the original statute of limitations for the Note expired on August 17, 1996, Cadle argued that Berkeley revived the statute of limitations when it renewed its promise to repay the existing debt in two letters addressed to Cadle dated March 12, 1997 and July 8, 1997. Berkeley, however, contended that the entire record, including other correspondence, evidenced that the statute of limitations was not revived as to the disputed underpaid interest, default interest, or late fees.

After discovery and extensive hearings on various motions, the district court held a bench trial on June 8, 1999. Based upon the entire record and the testimony elicited in trial, the district court determined that the letters from Berkeley contained in the record did not constitute renewed promises by Berkeley to repay the disputed underpaid interest, default interest, or late fees. The district court then dismissed the action as barred by the statute of limitations and ordered that judg-

_____

[4] In addition to Berkeley, Cadle named the Note's guarantors, Michael T. Hall & Associates, Ltd. and Michael T. Hall, as defendants. All the defendants represent the same interests and accordingly are referred to collectively as Berkeley.
[5] In addition, Cadle's complaint sought attorneys' fees and costs incurred in enforcing the Note.

ment be entered in favor of Berkeley. Cadle filed a timely notice of appeal.

## II

Section 25.3 of the Note provides that the terms of the Note shall "be given effect and construed by application of the laws of the Commonwealth of Virginia." (J.A. 58). At the time the Note was executed, Virginia law provided a five-year statute of limitations for collecting on a promissory note. See Va. Code Ann.§ 8.01-246(2) (Michie 1992). However, when the FDIC obtained the Note as a receiver, the provisions of 12 U.S.C. § 1821(d)(14)(A) granted the FDIC a six-year statute of limitations.[6] Under Virginia law, "an assignee obtains his rights from the assignor, and, thus, he is said to`stand in the shoes' of the assignor when pursuing an action on the contract or instrument assigned." Union Recovery Ltd. Partnership v. Horton, 477 S.E.2d 521, 523-24 (Va. 1996). Because Cadle is an assignee of the FDIC, under Virginia law, Cadle is also subject to the six-year statute of limitations. See id.; see also Federal Fin. Co. v. Hall, 108 F.3d 46, 50 (4th Cir. 1997).

That August 17, 1991 is the date the Note matured is not in dispute. According to Berkeley, the statute of limitations ran on Cadle's ability to sue on the Note six years after this date--August 17, 1997.

Cadle takes the position that Berkeley's letters addressed to Cadle dated March 12, 1997 and July 8, 1997, as well as Berkeley's letters addressed to the FDIC dated February 2, 1993 and August 24, 1993, constituted new promises to repay not only the full amount of the principal due on the Note, but also the full amount of the underpaid interest, default interest, and late fees due under the terms of the Note.[7]

_____

[6] Section 1821(d)(14)(A) provides that, in a contract action brought by the FDIC, the statute of limitations is the longer of six years or the period applicable under state law. See 12 U.S.C.A.§ 1821(d)(14)(A) (West 1989).

[7] In the district court, although the two letters addressed to the FDIC were entered into evidence and testimony was elicited concerning them, Cadle did not argue that those letters revived the statute of limitations. It is clear, however, that the district court based its decision on the entire record, which included Berkeley's letters to the FDIC, and thus, accounted for the relevance of those letters.

5

These new promises, Cadle argues, reset the statute of limitations clock. In support of its argument, Cadle relies upon Virginia Code § 8.01-229.G. This section provides that if a person who is liable for a debt on a contract makes a new written promise to pay the debt on that contract, then the person owed the debt "may maintain an action for the money so promised," within a revived statute of limitations running from the date of the new promise. Va. Code Ann. § 8.01-229.G (Michie 1992 & Supp. 1999). Under the revived statute of limitations, Cadle contends that at a minimum it had until February 2, 1999 to file an action to recover the underpaid interest, default interest, and late fees due it under the terms of the Note. Thus, its civil action filed on August 6, 1998 was within the statute of limitations.

The primary issue in this appeal is whether the letters at issue constituted promises to pay the principal only or whether they constituted promises to pay the principal plus the underpaid interest, default interest, and late fees due under the terms of the Note. Of course, resolution of this issue turns upon the intent of Berkeley in sending the letters. "`If there is more than one permissible inference as to intent to be drawn from the language employed, the question of the parties' actual intention is a triable issue of fact.'" Atalla v. Abdul-Baki, 976 F.2d 189, 192 (4th Cir. 1992) (quoting Bear Brand Hosiery Co. v. Tights, Inc., 605 F.2d 723, 726 (4th Cir. 1979)). The trier of fact's findings, in this case the district court's findings, may only be set aside if they are clearly erroneous. See Fed. R. Civ. P. 52(a); Williams v. Sandman, 187 F.3d 379, 381 (4th Cir. 1999)."A finding is `clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948), quoted in Minyard Enters. v. Southeastern Chem. & Solvent Co., 184 F.3d 373, 380 (4th Cir. 1999).

In this case, the district court, after hearing testimony and reviewing the evidence, found that Berkeley's letters constituted promises to repay only the principal and not the underpaid interest, the default interest, or the late fees. We cannot say that this finding is clearly erroneous. After reviewing the letters, we are convinced that more than one permissible inference as to Berkeley's intent may be drawn therefrom. Thus, the district court, as the trier of fact, was entitled to

6

consider evidence of Berkeley's intent in sending the letters. The district court ultimately credited the trial testimony of Berkeley's attorney, Zelnick, on this point. Zelnick testified that he wrote and sent the letters on Berkeley's behalf, and that by sending the letters, Berkeley intended only to acknowledge its obligation to repay the principal. Cadle presented no evidence refuting this testimony by Zelnick. Given Zelnick's unrefuted testimony on the issue of Berkeley's intent in sending the letters, we are not firmly convinced "that a mistake has been committed." United States Gypsum Co., 333 U.S. at 395. Therefore, we hold that the district court's finding regarding Berkeley's intent in sending the letters is not clearly erroneous.

III

In sum, we hold that the district court's finding that Berkeley's letters constituted promises to pay solely the principal and not the disputed underpaid interest, default interest, or late fees is not clearly erroneous. Therefore, the statute of limitations for suing on the Note was not revived as to those disputed amounts. Accordingly, we affirm the district court's dismissal of Cadle's suit as barred by the statute of limitations.[8]

AFFIRMED
_____

[8] As an alternative argument, Cadle asserts that Berkeley is equitably estopped from raising a statute of limitations defense. We have reviewed this alternative argument and find it to be without merit.

7