UNPUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

ALECIA MUELLER, Individually and
as Personal Representative of the
Estate of Joseph Mueller,
Plaintiff-Appellee,

No. 00-1689

v.

GENERALI-US BRANCH,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Spartanburg.
Margaret B. Seymour, District Judge.
(CA-98-3198-7-24)

Argued: January 25, 2001

Decided: February 16, 2001

Before NIEMEYER and KING, Circuit Judges, and
Gerald Bruce LEE, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

COUNSEL

**ARGUED:** John Robert Murphy, MURPHY & GRANTLAND, P.A.,
Columbia, South Carolina, for Appellant. Henry Spencer King, III,
LEATHERWOOD, WALKER, TODD & MANN, P.C., Spartanburg,
South Carolina, for Appellee. **ON BRIEF:** Cathy Hoefer Dunn,

LEATHERWOOD, WALKER, TODD & MANN, P.C., Spartanburg, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Generali-US Branch ("Generali") appeals the district court's entry of judgment in favor of Alecia Mueller ("Mrs. Mueller"), individually and as personal representative of the Estate of Joseph Mueller. We affirm the court's decision.

### I.

Mrs. Mueller brought this declaratory judgment action in state court in September 1998 to determine if she was entitled, pursuant to South Carolina law, to "stack" uninsured motorist coverage from an insurance policy issued by Generali (the "Policy"). Following removal of this action to federal court, the district court, acting pursuant to its jurisdiction under 28 U.S.C. § 1332(a), conducted a bench trial and thereafter issued its written Findings of Fact and Conclusions of Law. See Mueller v. Generali-U.S. Branch, No. CA-98-3198-7-24 (D.S.C. Apr. 27, 2000) (the "Order"). The court decreed that judgment be entered in favor of Mrs. Mueller in the sum of $300,000. We possess jurisdiction over Generali's appeal pursuant to 28 U.S.C. § 1291.

### A.

The facts relevant to our inquiry are set forth in the district court's Order. On November 30, 1994, Generali issued a garage liability policy ("Policy") for "Alecia Mueller d/b/a Carolina Fleet Services" as the named insured. Mrs. Mueller obtained the Policy through Tommy

2

Cannon ("Cannon"), an independent insurance agent in Spartanburg, South Carolina, who procured it through the Mayfield Agency, an authorized Generali agent in Greenville, South Carolina. The Policy indicated that the named insured was an individual, and it provided uninsured motorist coverage in the sum of $1,000,000. The portion of the policy pertaining to uninsured motorist coverage defined an "insured" as:

> 1. You [the named insured].
>
> 2. If you are an individual, any "family member".
>
> 3. Anyone else "occupying" a covered "auto" . . . .

J.A. 37.

Mrs. Mueller's husband, Joseph Mueller ("Mr. Mueller"), was killed on December 23, 1997, in an automobile accident with an uninsured motorist on an interstate highway while returning from the Charlotte, North Carolina airport with his wife's teenage children. The 1985 Pontiac that he was driving was not one of the vehicles designated as a covered automobile under the Generali Policy. However, the Pontiac bore uninsured motorist coverage with State Auto Insurance Group in the sum of $300,000, which was paid to Mr. Mueller's estate.

Prior to the accident, on May 16, 1996, Mrs. Mueller changed the form of her business from a sole proprietorship to a corporation, and the business became known as "Carolina Fleet Services, Inc." Mrs. Mueller did not notify Generali of this change at any time before the accident, because, according to the district court, she "did not understand the change in corporate status to be significant." Order, at 3. Indeed, the Policy had been renewed on a year-to-year basis since its issue and was in effect as originally written on the day of the accident. Cannon learned of the change of corporate status when Mrs. Mueller applied for an additional policy, over a year after her husband's accident, in October 1998.

3

B.

In the course of the district court proceedings, Generali unavail-
ingly asked the court to reform the Policy to designate "Carolina Fleet
Services, Inc." -- a corporation, rather than an individual -- as the
named insured.[1] On appeal, Generali contends that the district court
erred by refusing to reform the contract on the ground of mutual or,
alternatively, unilateral mistake. Generali asserts that Generali and
Mrs. Mueller jointly -- and erroneously -- maintained the Policy as
originally written for coverage of a sole proprietorship or, alterna-
tively, that Mrs. Mueller concealed or misrepresented the true status
of her business as a corporation. We review the court's findings of
fact for clear error and its conclusions of law de novo. See Williams
v. Sandman, 187 F.3d 379, 381 (4th Cir. 1999) (delineating standards
of review for bench trials in civil actions) (citations omitted).

In its Order, the district court explained that reformation is an equi-
table remedy by which written contracts are revised to conform to the
intentions of the parties. See Crewe v. Blackmon, 345 S.E.2d 754, 757
(S.C. Ct. App. 1986). A contract may be reformed on either of the two
grounds alleged by Generali: mutual mistake and unilateral mistake.

_____

[1] Generali asserted that this reformation would effectively bar Mrs.
Mueller's claim, on behalf of her late husband, for uninsured motorist
coverage under the Policy. In South Carolina, the right to stack such cov-
erage is available only to a Class I insured, i.e., the named insured, her
spouse and relatives residing in the household. See Concrete Servs., Inc.
v. United States Fid. & Guar. Co., 498 S.E.2d 865, 866 (S.C. 1998) (cita-
tions omitted); see also S.C. Code Ann.§ 38-77-30(7) (Law. Co-op.
Supp. 2000). Where the named insured is a corporation, there can be no
spouse or family members to qualify as Class I insureds. See Concrete
Servs., 498 S.E.2d at 867-68. In other words, because "Carolina Fleet
Services, Inc." would be the named insured if the Policy were reformed
pursuant to Generali's request, Mr. Mueller would no longer qualify as
a Class I insured. The parties stipulated that, without reformation, Gener-
ali was liable for stacked coverage of up to $300,000 (based on the limits
of the State Auto Insurance Group policy covering the 1995 Pontiac). See
S.C. Code Ann. § 38-77-160 (Law. Co-op. 1989 & Supp. 2000) ("[T]he
policy [under which stackable uninsured motorist coverage arises] shall
provide that the insured or named insured is protected only to the extent
of the coverage he has on the vehicle involved in the accident.").

4

See Shaw v. Aetna Cas. & Sur. Ins. Co., 262 S.E.2d 903, 905 (S.C. 1980).

The district court first addressed Generali's assertion that the Policy should be reformed on the ground of mutual mistake. A contract may be reformed on this ground "where the mistake is mutual and consists in the omission or insertion of some material element affecting the subject-matter or the terms and stipulations of the contract, inconsistent with those of the parol[] agreement which necessarily preceded it[.]" Shaw, 262 S.E.2d at 905 (citation omitted). That is, "[a] mutual mistake is one where both parties intended a certain thing and by mistake in the drafting did not get what both parties intended." Sims v. Tyler, 281 S.E.2d 229, 230 (S.C. 1981). In order to reform a contract for this reason, there must be clear and convincing evidence of mutual mistake. See Hann v. Carolina Cas. Ins. Co., 167 S.E.2d 420, 424 (S.C. 1969) (citations omitted).

After reviewing these authorities, the district court concluded that Generali failed to meet its evidentiary burden. The court explained:

> [Mrs.] Mueller clearly intended to obtain uninsured motorist coverage in order to protect her business and her employees. Further, she was unaware that by changing the corporate status of her business that she would not be fully protected under her insurance policy. While Generali was mistaken as to CFS's corporate status, [Mrs.] Mueller was not. [Mrs.] Mueller simply did not understand the significance of the change in status for purposes of her garage policy.

Order, at 4-5. Thus, the court declined to reform the Policy on the ground of mutual mistake.

The court next considered Generali's contention that the Policy should be reformed on the ground of unilateral mistake. In order to reform a contract for this reason, the party requesting reformation must prove that the mistake was "induced by the fraud, deceit, misrepresentation, concealment, or imposition in any form of the party opposed in interest to the reformation[.]" Shaw, 262 S.E.2d at 905 (citation omitted). Heeding this principle, the district court concluded that "Generali has failed to meet its burden of proof by clear and con-

5

vincing evidence that Mueller undertook to conceal the change" or otherwise engaged in any of the acts necessary for a determination of unilateral mistake. See Order, at 5. Accordingly, the court also refused to reform the contract on the basis of unilateral mistake.

The court ultimately concluded that, as the spouse residing in the household with Mrs. Mueller, Mr. Mueller was, under South Carolina law, a Class I insured at the time of the accident. The court ordered, therefore, that judgment be entered in favor of Mrs. Mueller in the sum of $300,000. See supra note 1.**2**

II.

Having fully considered the briefs and arguments of the parties, we agree with the district court that, pursuant to the law of South Carolina, Mrs. Mueller is entitled to recover under the Policy. We therefore affirm the ruling of the district court for the reasons stated in its Order of April 27, 2000.

AFFIRMED

_____
**2** The court also rejected Generali's alternative argument that Mrs. Mueller was precluded from stacking coverage because Mr. Mueller was not driving a "covered auto" at the time of the accident. The court, citing Concrete Services, determined that the reference to "covered auto" in the Policy did not operate to limit the ability of a Class I insured to stack uninsured motorist coverage. See 498 S.E.2d at 868 ("[I]n order to `have' a vehicle involved in the accident, it is necessary only that the insured qualify as a Class I insured."). Generali does not challenge this conclusion of law in this appeal.

6