0742

Adelaide M. CREWE, Appellant v. John B. BLACKMON, Respondent.
(345 S. E. (2d) 754)

Court of Appeals

*Jay Bender,* of *Belser, Baker, Barwick, Ravenel, Toal & Bender,* Columbia, *for appellant.*

*Carlos W. Gibbons, Jr.,* of *Kneece, Kneece, Willoughby, Ashley & Gibbons,* Columbia, *for respondent.*

Heard April 23, 1986.

Decided June 30, 1986.

CURETON, Judge:

This action concerns the reformation and specific performance of a contract to buy a lot with improvements in Columbia. Adelaide M. Crewe (buyer) appeals from the circuit court order which "overruled and vacated" the master's report in her favor. The circuit court's order also allows respondent John B. Blackmon (seller) to have a jury trial on matters raised in a counterclaim seeking damages for breach of contract. We reverse.

In accordance with Section 15-31-20, 1976 Code of Laws of South Carolina (repealed 1985), the circuit court referred this case to a master. The order of reference provided, "If during the reference there should appear legal issues suitable for resolution by a jury, those issues will be reserved for a trial by jury." The seller objected to the reference on the ground that portions of his counterclaim were appropriate for trial by jury.

On November 8, 1982, the parties entered into an agreement wherein the buyer agreed to purchase a home for Forty-six Thousand Dollars ($46,000). The purchase price

was to be paid in three installments: One Thousand Dollars ($1,000) on November 8; Nine Thousand Dollars ($9,000) on December 9; and the balance of Thirty-six Thousand Dollars ($36,000) on January 14, 1983. The first two installments were paid as agreed, but the remaining installment was never paid.

The crucial issue in this case is whether the parties agreed in the contract of sale that the sale was contingent upon the buyer's sale of her residence in New Jersey or obtaining financing using the New Jersey property as collateral. The buyer and her witnesses[1] testified that the parties agreed that the sale was contingent upon the buyer being able to sell or refinance her home in New Jersey. The buyer's witnesses testified that they saw the seller make written additions to a form contract and that he thereafter read out loud to them the additional language which included the alleged contingency. The seller denied that the parties reached any agreement concerning a contingency, but admitted on cross-examination that a conversation concerning contingencies could have taken place in November 1982.

In a letter dated March 4, 1983, the buyer advised the seller that she was unable to make financial arrangements for buying the property, and requested the seller return the Nine Thousand Dollars ($9,000). The seller refused to return any part of the Ten Thousand Dollars ($10,000) he had received from the buyer. Rather, he expended approximately Five Thousand Five Hundred Dollars ($5,500) to renovate the house which he thereafter sold for Fifty-six Thousand Eight Hundred Dollars ($56,800). The seller testified that he incurred other debts in connection with the sale of the house, to wit: Seven Hundred Dollars ($700) attorney fees; One Thousand Nine Hundred Eighty-eight Dollars ($1,988) real estate sales commission, and One Thousand Seven Hundred Four Dollars ($1,704) discount points.[2]

The issues in this appeal are: (1) whether the circuit court erred in holding that the seller had not waived his right to

---

[1] The witnesses were the buyer's son and daughter-in-law.

[2] These expenses total Nine Thousand Eight Hundred Ninety-two Dollars ($9,892). If this figure is subtracted from the actual sale price of Fifty-six Thousand Eight Hundred Dollars ($56,800), the seller would still net more than the Forty-six Thousand Dollar ($46,000) sale price to which the parties herein agreed.

trial by jury when he asserted his breach of contract counterclaim in an action seeking reformation and specific performance of a contract; (2) whether the circuit court erred in ruling that the buyer was not entitled to reformation based on fraud or inequitable conduct since she failed to read the contract before she signed it; and (3) whether the buyer sustained her burden of proving the seller's inequitable conduct by clear and convincing evidence.

## I.

The seller asserts that the circuit court correctly determined that he did not waive his right to a jury trial. In support of this position, the seller asserts that he steadfastly opposed the reference and relying on *Airfare, Inc. v. Greenville Airport Commission*, 249 S. C. 265, 153 S. E. (2d) 846 (1967), claims that he is entitled to a jury trial regarding his breach of contract counterclaim because a breach of contract action is an action at law. The seller further argues that it is not clear that the complaint sets forth an equitable cause of action because it mentions fraud and misrepresentation in addition to reformation and specific performance.

The buyer argues that the seller waived his right to a jury trial by asserting a legal counterclaim in an equitable action. We agree.

> "[I]t may be said that the essential character of the cause of action, and the remedy or relief it seeks, as shown by the allegations in the complaint, determine whether a particular action is at law or in equity...."

*Rogers v. Nation*, 284 S. C. 330, 332, 326 S. E. (2d) 182, 183 (Ct. App. 1985) (quoting *Bell v. Mackey*, 191 S. C. 105, 119, 3 S. E. (2d) 816, 822 (1939)). Here, although the complaint mentions fraud and misrepresentation, it essentially charges the seller with refusing "to return [buyer's] money by relying on a contract that does not express the actual agreement of the parties, and the purported contract relied upon by [the seller] omits the contingency clause agreed upon by the parties." The relief sought is reformation, specific performance and return of the buyer's money with interest.

Actions involving reformation of instruments are equitable in nature. 66 Am. Jur. (2d) *Reformation of Instruments* Section 1 (1973); *see Wolf v. Hayes*, 161 S. C. 293, 159 S. E. 620 (1931). Likewise, actions involving specific performance are equitable. *Wright v. Patrick*, 262 S. C. 434, 205 S. E. (2d) 175 (1974); *Aiken Mortgage Co. v. Jones*, 197 S. C. 245, 15 S. E. (2d) 119 (1941). We conclude that even though there are allegations of fraud and misrepresentation in the complaint, the buyer's action is one in equity.

Our Supreme Court has held that a defendant waived his right to a jury trial when he asserted a legal counterclaim to an equitable action and it concluded that there is no constitutional right to a jury trial for a non-compulsory counterclaim for damages asserted in an equitable action. *Welborn v. Cobb*, 92 S. C. 384, 75 S. E. 691 (1912). The Supreme Court later relied upon *Welborn* when it held, "By electing to assert its counterclaim in response to [plaintiff's] equitable action, [defendant] waived its right to a jury trial." *John D. Hollingsworth on Wheels v. Akron Corp.*, 273 S. C. 461, 463, 257 S. E. (2d) 165, 166 (1979). *See Aiken Mortgage Co. v. Jones*, 197 S. C. 245, 15 S. E. (2d) 119 (1941). Accordingly, the circuit court erred when it held the seller did not waive his right to a jury trial.

## II.

The seller denies both that an agreement concerning a contingency was reached and that any fraud or misrepresentation occurred during the execution of the contract. He also asserts that the buyer's negligence in not reading the contract bars reformation. The buyer argues that she is entitled to reformation because the written contract does not express the prior agreement of the parties and any unilateral mistake on her part was occasioned by the seller's inequitable conduct. We are persuaded by the buyer's argument.

Since the master and the circuit court did not reach the same conclusion as to the facts, this court can make findings of fact in accordance with our view of the preponderance of the evidence. *Townes Associates, Ltd. v. City of Greenville*, 266 S. C. 81, 221 S. E. (2d) 773 (1976). We agree with the seller that the credibility of witnesses is critical in this case. Since the master observed the demeanor

and appearance of the witnesses, his conclusion has "peculiar value in arriving at a correct result...." *Evatt v. Campbell*, 234 S. C. 1, 9, 106 S. E. (2d) 447, 451 (1959). It is particularly within the province of the master to pass upon the credibility of witnesses whom he saw and heard. *Hamilton v. Palmetto Properties, Inc.*, 237 S. C. 140, 116 S. E. (2d) 12 (1960). We find the facts to be as set forth by the master:

> The sale by the [seller] and purchase by the [buyer] was to be contingent upon the [buyer's] sale of her house in New Jersey or her use of that property as collateral to obtain financing there.
>
> The [buyer] attempted, but was unsuccessful in either selling her house or obtaining financing.
>
> The document prepared by the [seller] as the Contract of Sale contains handwritten entries in the space provided for the addition of contingencies, but the contract does not include the contingency agreed upon by the parties.
>
> The [buyer] signed the contract without reading it immediately after the [seller] read aloud the contingency language he was to have written in the contract form.[3]

Where a written contract does not conform to the intentions of the parties, a court may reform the contract. *Shaw v. Aetna Casualty & Surety Insurance Co.*, 274 S. C. 281, 262 S. E. (2d) 903 (1980). "Reformation is the remedy by which writings are rectified to conform to the actual agreement of the parties.... [I]t is available on the ground of mistake or misunderstanding as well as duress and related misconduct." Calamari and Perillo, *The Law of Contracts* Section 9-36 at pp. 311-12 (2d ed. 1977). A plaintiff's negligence does not bar reformation when the plaintiff's unilateral mistake was induced by the defendants' fraud, inequitable conduct, deceit or concealment. *Aiken Petroleum Co. v. National Petroleum Underwriters*, 207 S. C. 236, 36 S. E. (2d) 380 (1946); *see Hellams v. Harnist*, 284 S. C. 256, 325 S. E. (2d) 569 (Ct. App. 1985) (negligence is no bar to an action to reform a contract).

---

[3] The buyer testified that she did not obtain a copy of the contract at the time of execution.

### III.

Both parties acknowledge that proof of the seller's fraudulent or inequitable conduct must be proved by clear and convincing evidence. The seller argues that the testimony of the buyer's relatives should be given little probative value because of their presumed bias. This contention is without merit. The seller has not cited any case for the proposition that the testimony of witnesses who are related by blood or marriage to a party must be presumed to be biased. While the family relationship between a witness and a party may bear upon the witness's bias, the fact of the relationship does not establish bias, but is simply a circumstance to be considered by the fact finder in appraising credibility. *State v. Reilly*, 71 N. C. App. 1, 321 S. E. (2d) 564 (1984), *aff'd*, 313 N. C. 499, 329 S. E. (2d) 381 (1985).

We cannot say that the buyer failed to prove her case by clear and convincing evidence when she and both of her witnesses convinced the master that the sale was contingent upon her obtaining financing and that the seller read this contingency provision to her, ostensibly from the contract, before she signed it.

For the foregoing reasons the order of the trial court is reversed and the relief recommended in the master's report is hereby granted, i.e., (1) the land sales contract is reformed to state the claimed financing contingency; and (2) the buyer is entitled to a money judgment against the seller in the amount of Ten Thousand Dollars ($10,000), representing all sums paid by her under the contract together with interest at the legal rate from March 4, 1983.

The order of the circuit court is

Reversed.

GARDNER and GOOLSBY, JJ., concur.