1011

C. Ed CROSBY, Respondent v. PROTECTIVE LIFE
INSURANCE COMPANY, Appellant.

(359 S. E. (2d) 298)

Court of Appeals

*Richard B. Watson* and *George K. Lyall,* both of *Nelson, Mullins, Grier & Scarborough,* Columbia, *for appellant.*

*George A. Kastanes,* Columbia, *for respondent.*

Heard June 17, 1987.

Decided Aug. 10, 1987.

CURETON, Judge:

C. Ed Crosby commenced this action against Protective Life Insurance Company (Protective) for actual and punitive damages for fraud in the issuance of life insurance for his daughter, or in the alternative for reformation of the policy on the basis of mutual mistake. The trial judge granted Protective's motion for summary judgment on the fraud cause of action. Following a trial, the judge reformed the policy to provide additional death benefits. Protective appeals. We reverse.

Crosby contacted Ronald Keith Williams, a sales agent for Protective, to purchase $50,000.00 life insurance coverage for himself and $25,000.00 coverage on each of his three children. Williams informed Crosby that Protective did not offer the term life insurance coverage Crosby desired for his youngest child, Cynthia, who at that time was eighteen and one-half years of age. Term life insurance was not available for persons under age twenty. Crosby purchased $50,000.00 life insurance for himself and $25,000.00 for each of his two

older children. Upon Williams' recommendation, Cynthia was insured by a rider attached to Crosby's policy. Crosby's policy states that the attached children's rider provides "4 Units" of benefit coverage. The attached rider reveals that the death benefit for the child shall be $1,000.00 for each unit. Crosby testified that he did not read the policy or rider.

In July 1985 Cynthia was killed in an automobile accident. Crosby says that at this point he read the policy and rider and discovered Cynthia's insurance only provided $4,000.00 coverage. According to Crosby, at the time he purchased the rider he believed he was purchasing $20,000.00 coverage on Cynthia's life. Upon Protective's refusal to pay more than $4,000.00, Crosby commenced this suit.

The case was tried before a judge. Crosby testified Williams informed him during their initial discussions that one "unit" of coverage under the children's rider represented $5,000.00, and that they had discussed obtaining $20,000.00 coverage for Cynthia. Crosby stated that he had relied upon Williams' representations in obtaining the insurance. Williams, however, testified that he informed Crosby that the maximum insurance he could presently obtain for Cynthia would be $10,000.00. Williams also testified he was aware that one children's rider unit equalled $1,000.00 and discussed with Crosby the possibility of obtaining 5 units or $5,000.00 insurance on Cynthia, an amount sufficient to cover burial costs.

The trial judge found there was sufficient evidence to reform the contract to provide $20,000.00 insurance for Cynthia. The judge found Crosby mistakenly believed he was purchasing $20,000.00 insurance for Cynthia. According to the judge, this finding was supported by the fact that Crosby initially sought $25,000.00 coverage for each child, and by the fact that $4,000.00 coverage is comparatively minimal. Despite Williams' testimony, the judge also found that the contract as written was a result of a mistake by Williams, acting as agent for Protective.

The judge further found that the children's rider provided for Cynthia also violated Protective's own underwriting policies. At the time of the application, Cynthia was eighteen and one-half years of age. According to the policy, a children's rider cannot be issued to a child over eighteen years

of age. According to the court, it could not "conceive of more clear and convincing evidence of a mistake on the part of a party when the contract as finally written violates the specific terms and conditions of that contract, as set forth on the face, and that contract was prepared by the same party." The court noted that because Williams arranged for the issuance of a policy that violated its own terms, this was evidence that he did not understand the policies and procedures of the company, lending credence to Crosby's testimony that Williams informed him one unit of coverage on the rider equalled $5,000.00. The judge further held that, even if the mistake was unilateral, it was occasioned by imposition through Protective's representation, through its agent, that one unit equalled $5,000.00, and by the confusing use of the term "units" on the policy rather than dollar amounts.

## MUTUAL MISTAKE

On appeal of an action in equity tried by a judge alone without a reference, this Court has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence. *Commercial Union Assurance Co. v. Castile*, 283 S. C. 1, 320 S. E. (2d) 488 (Ct. App. 1984). A contract may be reformed on the ground of mistake when the mistake is mutual and consists in the omission or insertion of some material element affecting the subject matter or the terms and stipulations of the contract, inconsistent with those of the parol agreement which necessarily preceded it. *Id.* A mistake is mutual where both parties intended a certain thing and by mistake in the drafting did not obtain what was intended. *Sims v. Tyler*, 276 S. C. 640, 281 S. E. (2d) 229 (1981). Before equity will reform a contract, the existence of a mutual mistake must be shown by clear and convincing evidence. *Id.*

In our view the evidence does not demonstrate a mutual mistake. While the record supports a finding that Crosby was mistaken as to the amount of coverage actually obtained, there is no clear and convincing evidence of such a mistake by Williams as agent for Protective. Reformation is the remedy by which writings are rectified to conform to the actual agreement of the parties. *Crewe v.*

*Blackmon,* 289 S. C. 229, 345 S. E. (2d) 754 (Ct. App. 1986). We find insufficient evidence that both parties agreed to obtain $20,000.00 in coverage under the rider. Williams testified unequivocally that he could not have written a policy to include a rider for Cynthia in the amount of $20,000.00 since coverage under a children's rider is limited to $10,000.00. He also testified he and Crosby discussed the premium expense involved in obtaining the maximum $10,000.00 coverage under the rider, and "had to back it down to an amount that was acceptable costwise."

Williams testified that one children's rider unit was worth $1,000.00 and that he was unfamiliar with any insurance company which defined a children's rider unit in an amount other than $1,000.00. Although Crosby claimed a conversion provision under the children's rider was not explained to him, Williams testified he had discussed the conversion provision with Crosby. Under this provision, once Cynthia reached the age of nineteen and one-half, one year following the application date, Crosby could convert her rider on his policy to her own policy at five times the unit amount, without evidence of insurability, to provide $20,000.00 coverage on Cynthia.

Unlike the trial judge, we are not persuaded Cynthia was ineligible for coverage under the rider, or that even if she was ineligible, this amounts to clear and convincing evidence of mutual mistake regarding the amount of coverage. Cynthia's inclusion under the children's rider was not contested by Protective. Moreover, Protective presented evidence from a Mr. Walker, who had been employed in the life insurance business since 1947, that age in this sense referred to "attained age," or a person's age on their previous birthday. The trial judge interpreted age to mean what is known in the insurance business as "nearest age." Under this terminology, since Cynthia was over eighteen and one-half years of age on the date of the application, she would be nineteen years old for purposes of eligibility under this rider. We are unsure from the record which of these methods pertained to this rider. In our opinion, however, even if Williams were mistaken as to whether Protective utilized attained age or nearest age for purposes of this rider, this does not illustrate any mistake on his part as to the amount

of coverage under each unit, the amount of coverage actually available under the rider, or the amount of coverage actually purchased in this policy.

## UNILATERAL MISTAKE

The court found in the alternative that even if there was a mistake solely on Crosby's part, the mistake was occasioned "by the fraud, deceit or imposition of the defendant company through its agent both in direct representations and in drafting a needlessly and [sic] ambiguous contract of insurance." A court of equity may reform a contract where the mistake is not mutual but unilateral and has been induced by the fraud, deceit, misrepresentation, concealment of imposition in any form of the party opposed in interest to the reformation without negligence on the part of the party claiming the right, or where the mistake is accompanied by very strong and extraordinary circumstances showing imbecility or something which would make it a great wrong to enforce the agreement. *Shaw v. Aetna Casualty and Surety Insurance Co.*, 274 S. C. 281, 262 S. E. (2d) 903 (1980).

We do not find sufficient evidence of any fraud, deceit, misrepresentation or imposition, or of any strong and extraordinary circumstances, to justify reformation of the insurance contract. Prior to trial, the judge granted Williams' and Protective's motions for summary judgment on Crosby's fraud cause of action. Aside from this ruling, however, the evidence does not demonstrate misrepresentation or deception amounting to imposition on Protective's part. Williams and Walker both testified that it was common in the insurance business to refer to coverage under a children's or spouse's rider to a life insurance policy as "units." Moreover, Crosby has been employed in the insurance business for years as a claims adjuster in worker's compensation. Crosby testified that although he did not read the policy when he received it, he later read it and had no trouble ascertaining that one unit of coverage was the equivalent of $1,000.00.

Based on our review of the record, we find no evidence of a mistake by Protective in providing $4,000.00 coverage for Cynthia to justify reformation on the basis of mutual mis-

take. We furthermore do not find sufficient evidence of any fraud, deception, misrepresentation or imposition by Protective to justify reformation of the insurance contract on the ground of a unilateral mistake.

For the reasons stated above, the judgment appealed from is

Reversed.

GARDNER and SHAW, JJ., concur.