741 S.E.2d 572

**INDEPENDENCE NATIONAL BANK, Respondent,**

v.

**BUNCOMBE PROFESSIONAL PARK, LLC, and David DeCarlis, s/a David D. DeCarlis, Appellants.**

Appellate Case No. 2011–196049.

No. 5090.

Court of Appeals of South Carolina.

Heard Nov. 13, 2012.
Decided Feb. 20, 2013.
Rehearing Denied April 18, 2013.

516

Mary Leigh Arnold, of Mary Leigh Arnold, PA, of Mount Pleasant, for Appellants.

Martin Kyle Thompson, of Clawson & Staubes, LLC, of Greenville, for Respondent.

LOCKEMY, J.

Buncombe Professional Park, LLC (Buncombe) and David DeCarlis (collectively Appellants) appeal the Master–In–Equi-

ty's (Master) reformation of Independence National Bank's (Independence) mortgage, which placed it in a superior position to DeCarlis's mortgage. Appellants also appeal the Master's additional finding that pursuant to the doctrine of equitable subrogation, Independence was entitled to a first and superior mortgage. We reverse.

## FACTS

Buncombe obtained a commercial loan in the amount of $1.65 million from Independence, of which DeCarlis was an individual guarantor. This loan was secured by approximately 4.9 acres of land in Greenville County (Greenville property). Buncombe and DeCarlis retained attorney Tommy Dugas to handle the loan closing. Independence's loan was to satisfy a first mortgage on the Greenville property held by First National Bank of Spartanburg (First National). After receiving information from Independence regarding the details of the loan, Dugas conducted an examination of the Greenville property's title. As part of that examination, Dugas determined the Greenville property was encumbered by two mortgages of record, the one held by First National and a second mortgage held by DeCarlis individually.

At the closing, Robert M. Lowery was present on behalf of Independence, and DeCarlis was present on behalf of Buncombe and individually as a guarantor of the note. DeCarlis individually guaranteed the commercial promissory note, and a separate guaranty agreement was executed as well. Buncombe and Independence executed a loan commitment letter that stated Independence would make the requested loan to Buncombe under certain terms and conditions, one being that Buncombe would grant a first in priority real estate mortgage in the Greenville property to Independence. Specifically, one of the requirements within the conditions precedent section of the loan commitment letter stated,

> A commitment to issue a standard ALTA mortgagee title insurance policy in form, content and from a title insurer satisfactory to Independence, insuring the mortgage as a **first lien on the Property** for the full amount of the loan, with such endorsements as Independence may require. Title shall be fee simple and marketable, free and clear of all defects, liens and encumbrances, including mechanics' liens.

(emphasis added). DeCarlis signed the loan commitment letter, dated September 25, 2007, as a guarantor and on behalf of Buncombe. Moreover, the mortgage included the following language: "The words "Related Documents" mean ... any ... documents or agreements executed in connection with this Security Instrument whether now or hereafter existing. The Related Documents are hereby made a part of this Security Instrument by reference thereto, with the same force and effect as if fully set forth herein." Dugas was the only attorney at the closing, representing all parties. DeCarlis, on behalf of Buncombe and individually, further signed a business loan agreement stating that any additional documents necessary to make the terms of the loan conform to the conditions contained in the lender's commitment would be executed accordingly. The commercial real estate mortgage issued to Buncombe contained similar language.

DeCarlis did not subordinate his previously recorded mortgage to that of Independence's mortgage, nor was his mortgage satisfied or released during the closing. Lowery testified that while Dugas reviewed the lender's commitment letter with DeCarlis, DeCarlis never revealed the existence of his mortgage on the Greenville property. Independence's mortgage was recorded in the Greenville County Register of Deeds (ROD) on September 26, 2007, at Book 4855, Page 978. The mortgage to DeCarlis remained open and of record.

The maturity date for Independence's loan was originally March, 25, 2009. However, through a change in terms agreement, the date was extended to March 25, 2010. The loan was not paid off by the maturity date, and Independence sought to foreclose on their mortgage. Independence then discovered that DeCarlis's loan was still open and of record. Dugas contacted Buncombe and DeCarlis regarding the issue and requested that DeCarlis sign a subordination agreement. DeCarlis declined to execute the agreement.

On May 14, 2010, Independence filed a foreclosure complaint against Appellants. On June 18, 2010, Appellants filed an answer and counterclaim challenging the priority of Independence's mortgage. On October 14, 2010, the court denied a motion for summary judgment by Independence. Thereafter, on March 24, 2011, Independence filed a motion to amend its complaint, which was granted over Appellants' objection. The

amended complaint included a new cause of action for reformation.

Dugas testified at the hearing on April 29, 2011, and stated he had been aware of DeCarlis's mortgage on the Greenville property and had written himself a note that DeCarlis's mortgage needed to be released. Dugas admitted he made a mistake in failing to have DeCarlis execute a satisfaction, release, or subordination of DeCarlis's mortgage at the loan closing and stated the parties agreed Independence would have a first mortgage. However, when he tried to correct the mistake a couple of years later, DeCarlis replied through his attorney, refusing to sign a subordination agreement. He stated he did "not have any independent recollection that the loan was contingent on [his] subordinating his individual mortgage to Independence National Bank." A manager from Independence's loan department testified that Independence would not loan $1.65 million as a second mortgage and had DeCarlis's mortgage been revealed to him, he would have refused to issue the loan.

Following the hearing, in which DeCarlis failed to appear and did not put forth any evidence, the Master entered an order of foreclosure prepared by Independence. Subsequently, Appellants filed a motion to reconsider, and Independence filed a motion to alter or amend the order to include a ruling on equitable subrogation. Appellants objected to altering the order on the grounds that equitable subrogation was not pled by Independence. The Master denied Appellants' motion, but granted Independence's motion and found it met the requirements for equitable subrogation as well. Appellants then timely filed this appeal.

## ISSUES ON APPEAL

Did the Master err by failing to give priority to DeCarlis's mortgage when it was filed prior to Independence's mortgage?

Did the Master err in reforming Independence's mortgage?

Did the Master err in amending his original order to provide for equitable subrogation?

## STANDARD OF REVIEW

■■ "An action to establish lien priorities is an action in equity," *SunTrust Bank v. Bryant*, 392 S.C. 264, 267, 708

S.E.2d 821, 822 (Ct.App.2011) (citing *Fibkins v. Fibkins,* 303 S.C. 112, 115, 399 S.E.2d 158, 160 (1990)), as is an action to foreclose a mortgage. *Rakestraw v. Dozier Assocs., Inc.,* 285 S.C. 358, 360, 329 S.E.2d 437, 438 (1985). "The appellate court's standard of review in equitable matters is our own view of the preponderance of the evidence." *SunTrust Bank,* 392 S.C. at 267, 708 S.E.2d at 822–23 (citing *Williams v. Wilson,* 349 S.C. 336, 339–40, 563 S.E.2d 320, 322 (2002)).

## LAW/ANALYSIS

Appellants first argue the Master erred in giving priority to Independence's mortgage because it is clear that DeCarlis's mortgage was filed first in time, and therefore is superior.

Section 30–7–10 of the South Carolina Code (2007) provides: All ... mortgages or instruments in writing in the nature of a mortgage of any real property, ... all assignments, satisfactions, releases, and contracts in the nature of subordinations, ... or other liens on real property created by law or by agreement of the parties and generally all instruments in writing conveying an interest in real estate required by law to be recorded in the office of the register of deeds or clerk of court in those counties where the office of the register of deeds has been abolished or in the office of the Secretary of State delivered or executed after July 31, 1934, except as otherwise provided by statute, are valid so as to affect the rights of subsequent creditors (whether lien creditors or simple contract creditors), or purchasers for valuable consideration without notice, only from the day and hour when they are recorded in the office of the register of deeds or clerk of court of the county in which the real property affected is situated. In the case of a subsequent purchaser of real estate, or in the case of a subsequent lien creditor on real estate for valuable consideration without notice, the instrument evidencing the subsequent conveyance or subsequent lien must be filed for record in order for its holder to claim under this section as a subsequent creditor or purchaser for value without notice, and **the priority is determined by the time of filing for record.**

(emphasis added). We agree that section 30–7–10, read without reference to any other doctrine or statute, indicates DeCarlis's lien is superior to Independence's lien. However, we

examine whether the Master was correct in finding Independence had the superior lien pursuant to reformation of the mortgage and/or the doctrine of equitable subrogation.

### Reformation

Appellants maintain the Master's reformation of the mortgage was error because Independence did not prove by clear and convincing evidence a "meeting of the minds." We agree.

■■■ " 'A contract may be reformed on the ground of mistake when the mistake is mutual and consists in the omission or insertion of some material element affecting the subject matter or the terms and stipulations of the contract, inconsistent with those of the parol agreement which necessarily preceded it.' " *George v. Empire Fire & Marine Ins. Co.*, 344 S.C. 582, 590, 545 S.E.2d 500, 504 (2001) (quoting *Crosby v. Protective Life Ins. Co.*, 293 S.C. 203, 206, 359 S.E.2d 298, 300 (Ct.App.1987)). " 'A mistake is mutual where both parties intended a certain thing and by mistake in the drafting did not obtain what was intended.' " *Id.* (quoting *Crosby*, 293 S.C. at 206, 359 S.E.2d at 300). " 'Reformation is the remedy by which writings are rectified to conform to the actual agreement of the parties.' " *Crosby*, 293 S.C. at 206, 359 S.E.2d at 300 (quoting *Crewe v. Blackmon*, 289 S.C. 229, 234, 345 S.E.2d 754, 757 (Ct.App.1986)). "Before equity will reform a contract, the existence of a mutual mistake must be shown by clear and convincing evidence." *Id.* (citing *Crosby*, 293 S.C. at 206, 359 S.E.2d at 300).

■■■ The Master can reform a material element affecting subject matter or the terms and stipulations of the contract. In the present case, the error was failing to have DeCarlis sign a subrogation agreement. DeCarlis was not a party to the mortgage and reformation does not permit a court to write a new, additional party into the mortgage to correct the error. *See* 66 Am.Jur.2d *Reformation of Instruments* § 51 (2011) ("A court of equity may not add or substitute other parties for those appearing on the face of a contract where the effect may be to make a new contract."). Thus, we find the Master erred in reforming the mortgage to alter the parties' priority rights.

### Equitable Subrogation

Appellants argue the Master erred in altering his final order to include findings regarding the concept of equitable

subrogation because relief for the same was never pled by Independence. Alternatively, Appellants argue even if the Master was correct in allowing Independence to allege a claim of equitable subrogation, he erred in determining it was an appropriate remedy when Independence failed to establish any of the essential elements. We find their first argument to be without merit, but agree with their second argument.

■ In its amended complaint, Independence contended that DeCarlis's mortgage should be ruled junior and secondary to Independence's mortgage pursuant to the theory of equitable subrogation. In their amended answer, Appellants responded that because Independence does not hold a first priority lien and was aware it did not hold a first priority lien, its allegations in Paragraph 13, which included the equitable subrogation claim, were "completely improper." Appellants' direct response to Independence's claim of equitable subrogation indicates they had notice of the claim, and further, had time to prepare any defense or argument they may have had against the claim. We believe it was appropriate to amend the final order to include findings on the claim of equitable subrogation, and Appellants were not prejudiced by the Master's decision.

■ Continuing to the merits, equitable subrogation allows a subsequent creditor to assume the rights and priority of a prior creditor. To be granted the remedy of equitable subrogation, the mortgagee must establish the following requirements: (1) the party claiming subrogation has paid the debt; (2) the party was not a volunteer but had a direct interest in the discharge of the debt or lien; (3) the party was secondarily liable for the debt or for the discharge of the lien; and (4) no injustice will be done to the other party by the allowance of the equity. *Dedes v. Strickland,* 307 S.C. 155, 158, 414 S.E.2d 134, 136 (1992). "Additionally, the party asserting the doctrine must not have had actual notice of the prior mortgage." *Id.* In considering this doctrine, it is important to note that constructive notice is not a bar. *Pee Dee State Bank v. Prosser,* 295 S.C. 229, 238, 367 S.E.2d 708, 713 (1988), *overruled on other grounds by United Carolina Bank v. Caroprop, Ltd.,* 316 S.C. 1, 446 S.E.2d 415 (1994).

Independence, the party claiming subrogation, paid Buncombe's debt to First National by satisfying First National's

mortgage on the Greenville property. Independence loaned Buncombe $1.65 million secured with a mortgage on the Greenville property, in part to satisfy First National's mortgage, and thus, was not a volunteer. Regarding the third requirement, Independence was secondarily liable for the discharge of First National's mortgage under the instruments creating the new mortgage. As to the fourth requirement, we also do not believe an injustice would be done to DeCarlis, because it appears from the record he was aware Independence expected a first mortgage, and he would be placed in the same position he would have been if the closing had gone as intended by the parties.

■■■ However, we find Independence had actual notice of the prior mortgage. *See Spence v. Spence*, 368 S.C. 106, 118, 628 S.E.2d 869, 875 (2006) ("[I]n the context of a real estate transaction, a purchaser of real property has actual notice of a title defect or other claim, lien, or interest adverse to his own in a particular property when he actually knows about the defect or claim, or when a reasonable person, if made aware of the same information known to the buyer, would be charged with actual notice of the defect or claim. Actual notice may consist of facts or conditions observed by a prospective purchaser as well as information conveyed orally or in writing to him."). While the record does not contain evidence that Independence was directly informed about the existence of DeCarlis's lien, we believe there was an agent-principal relationship between Dugas and Independence, such that actual notice to Dugas was actual notice to Independence. *See Nationwide Mut. Ins. Co. v. Prioleau*, 359 S.C. 238, 242, 597 S.E.2d 165, 168 (Ct.App.2004) ("[T]he relationship of agency need not depend upon express appointment and acceptance thereof. Rather, an agency relationship may be, and frequently is, implied or inferred from the words and conduct of the parties and the circumstances of the particular case."); *see also Citizens' Bank v. Heyward*, 135 S.C. 190, 199, 133 S.E. 709, 712 (1925) (stating notice to agent is notice to principal); *compare Pee Dee State Bank*, 295 S.C. at 238, 367 S.E.2d at 713–14 (finding no evidence in the record of any information the closing attorney had regarding other liens on the property; thus, equitable subrogation was not barred).

Independence now claims no evidence established Dugas was its agent. However, Dugas was the only attorney present

at the closing, and he was the only one authorized to conduct the closing. Independence admits in its brief Dugas represented both parties with regard to the closing. Despite the fact Buncombe and DeCarlis paid for Dugas's services, Independence required them to do so in the "Costs" section of its loan commitment letter, stating "[o]n or before the closing Borrower shall pay all costs, expenses and fees (including, without limitation, any appraisal, survey, insurance, environmental assessment, engineering, inspections, searches, recording and attorneys' fees) associated with this transaction." Dugas conducted a title search before the closing and discovered DeCarlis's lien. He admitted he knew of DeCarlis's mortgage at the closing, yet failed to subordinate the mortgage to Independence's mortgage. Thus, we find Independence had actual knowledge of DeCarlis's mortgage. For the foregoing reasons, we reverse the Master's ruling that equitable subrogation was a proper remedy under these facts.

**CONCLUSION**

We hold neither reformation nor equitable subrogation were appropriate remedies under these facts. Accordingly, the Master's rulings are

**REVERSED.**

SHORT and KONDUROS, JJ., concur.