769 S.E.2d 242

**56 LEINBACH INVESTORS, LLC, Appellant/Respondent,**

v.

**MAGNOLIA PARADIGM, INC, Respondent/Appellant.**

Appellate Case No. 2012–213389.

No. 5270.

Court of Appeals of South Carolina.

Heard June 11, 2014.
Decided Sept. 10, 2014.
Rehearing Denied March 19, 2015.

Donald H. Howe, of the Law Office of Donald H. Howe, LLC, of Charleston, for Appellant/Respondent.

William S. Barr, of Barr, Unger & McIntosh, LLC, of Charleston, for Respondent/Appellant.

KONDUROS, J.

In this cross-appeal, 56 Leinbach Investors, LLC (Leinbach) appeals the master-in-equity's determination it breached a lease agreement with Magnolia Paradigm, Inc. (Magnolia) when Leinbach leased a portion of the subject property to a

third party. Leinbach further appeals the master's award of a $300 per month rent abatement as damages, arguing Magnolia suffered only nominal damages. Magnolia appeals the master's admission of parol evidence regarding the scope of the subject property and the damages award, contending the master erred in reforming the lease and that rent abatement should be equivalent to the amount Leinbach is receiving under the third-party lease. We affirm in part, reverse in part, and remand.

## FACTS/PROCEDURAL BACKGROUND

Leinbach and Magnolia entered into a lease agreement in 2003 whereby Magnolia leased from Leinbach a 1.21–acre undeveloped parcel of land for Baker Motors to use as employee parking. The parcel is located in Charleston County and adjoined another parcel owned by Leinbach and occupied by the Charleston Montessori School. Prior to signing the lease, the parties negotiated the terms including Magnolia submitting a planned design for construction of the parking area, which covered most of the 1.21 acres with the exception of a small wooded area. Leinbach sought $2,000 per month in rent, and after negotiations, the parties agreed upon $1,800 per month.[1]

In 2005, Optima Towers (Optima) approached Leinbach's sole member, Clyde Hiers, about leasing space to erect a communications tower on the property. Baker Motors was aware of the tower's erection because Optima coordinated with it regarding construction equipment at the site and the tower is immediately adjacent to the employee parking lot.

In late 2006, Magnolia decided to buy the leased property and discovered the tower had been erected within the wooded area of the 1.21 acres. In late 2007, Magnolia notified Leinbach it considered the erection of the tower to be a violation of the lease and began deducting $886.97, the amount Leinbach was receiving from Optima, from its monthly lease payments. Leinbach filed suit against Magnolia, alleging Magnolia breached the lease by failing to pay the full amount of rent due under the lease. Magnolia asserted the defense of abatement under the lease and counterclaimed for the $886.97

---

1. The lease also provides for incremental increases in rent at certain intervals.

Optima was paying Leinbach under the tower lease. Both parties also asserted unjust enrichment claims. Neither party sought to terminate the lease.

The case was referred to the master, and a trial was conducted. The master concluded the leased property constituted the entire 1.21 acres and Leinbach breached the lease by permitting the erection of the tower. However, it further concluded Magnolia had abandoned the wooded area and also breached the lease by withholding the $886.97 in payments each month. The master further determined the parties made a mutual mistake that allowed for reformation of the lease because neither Leinbach nor Magnolia understood the wooded area was covered by the lease agreement. The master then reformed the lease to reflect Magnolia's inability to use the wooded area. He determined Magnolia could not use one sixth of the leased property and reduced Magnolia's the monthly rent by that amount, $300 per month. These cross-appeals followed.

## STANDARD OF REVIEW

■ "When legal and equitable actions are maintained in one suit, each retains its own identity as legal or equitable for purposes of the applicable standard of review on appeal." *Corley v. Ott,* 326 S.C. 89, 92 n. 1, 485 S.E.2d 97, 99 n. 1 (1997). The reviewing court should "view the actions separately for the purpose of determining the appropriate standard of review." *Jordan v. Holt,* 362 S.C. 201, 205, 608 S.E.2d 129, 131 (2005).

■ "An action for breach of contract seeking money damages is an action at law." *Ellie, Inc. v. Miccichi,* 358 S.C. 78, 89, 594 S.E.2d 485, 491 (Ct.App.2004) (internal quotation marks omitted). On appeal of an action at law, this court will affirm the master's factual findings if there is any evidence in the record which reasonably supports them. *Query v. Burgess,* 371 S.C. 407, 410, 639 S.E.2d 455, 456 (Ct.App.2006).

■ "Actions involving reformation of instruments are equitable in nature." *Crewe v. Blackmon,* 289 S.C. 229, 233, 345 S.E.2d 754, 756 (Ct.App.1986). In an action in equity, tried by the master, the appellate court has jurisdiction to find facts in accordance with its views of the preponderance of the

evidence. *Fox v. Moultrie,* 379 S.C. 609, 613, 666 S.E.2d 915, 917 (2008).

## LAW/ANALYSIS

### I. Leinbach's Breach of the Lease

 Leinbach contends the master erred in finding it breached the lease agreement because "demised premises" included the entire 1.21 acres of property described in the lease. We disagree.

 "When [a] contract's language is unambiguous it must be given its plain and ordinary meaning and the court may not look to extrinsic evidence to interpret its provisions." *Stevens Aviation, Inc. v. DynCorp Int'l, LLC,* 394 S.C. 300, 307, 715 S.E.2d 655, 659 (Ct.App.2011), *rev'd on other grounds,* 407 S.C. 407, 756 S.E.2d 148 (2014). "[E]xtrinsic evidence may only be considered if the contract is ambiguous." *Preserv. Capital Consultants, LLC v. First Am. Title Ins. Co.,* 406 S.C. 309, 320, 751 S.E.2d 256, 261 (2013).

Article I, Section 1.01 of the lease, entitled "Demised Premises," indicates "Landlord hereby demises and leases to Tenant, and Tenant hereby takes and leases from Landlord, certain premises (herein called the "Demised Premises") consisting of the real estate and any improvements located or to be located thereon described 1.21 acres of real estate located at Leinbach Dr.[,] City of Charleston, State of South Carolina and more particularly described as parcel H–2 of TMS# 349–01–00–045. . . ."

 Although other sections of the lease discuss the permissible use of the demised premises, the contract unambiguously indicates the entire 1.21 acres constitutes the demised premises.[2] Article XII entitled "Title to Premises" states, "the Demised Premises shall hereafter be subject to no leases,

---

2. With respect to Magnolia's argument the master erred in admitting parol evidence to determine the meaning of the contract, we agree the lease was not ambiguous and did not required extrinsic evidence to ascertain the extent of demised premises. However, extrinsic evidence regarding the plans for Magnolia's parking area and use of the demised premises was relevant to the question of damages because the plans demonstrate the speculative nature of any future use of the wooded area in dispute.

easements, covenant, restriction or the like which in any manner would prevent or interfere with Tenant." Additionally, Tenant is "entitled to lawful, quiet and peaceful possession and occupation of the Demised Premises and shall enjoy all the rights, herein granted without any let, hindrance, ejection, molestation or interference by any person."

The tower's presence within the demised premises deprives Magnolia of full, quiet, peaceful possession, and the Optima lease interferes with Magnolia's use of the property in some manner, although not to the extent Magnolia argues. Consequently, we affirm the master's ruling that Leinbach breached the lease.

## II. Reformation of the Lease

■ Magnolia contends the master erred in reforming the lease based on mutual mistake. We agree.

■ "A contract may be reformed on the ground of mistake when the mistake is mutual and consists in the omission or insertion of some material element affecting the subject matter or the terms and stipulations of the contract, inconsistent with those of the parol agreement which necessarily preceded it." *George v. Empire Fire & Marine Ins., Co.,* 344 S.C. 582, 590, 545 S.E.2d 500, 504 (2001). "A mistake is mutual where both parties intended a certain thing and by mistake in the drafting did not obtain what was intended. Before equity will reform a contract, the *existence of a mutual mistake must be shown by clear and convincing evidence.*" *Id.* (emphasis added); *see also* 66 Am.Jur.2d *Reformation of Instruments* § 1 (2011) ("Reformation of a contract is an extraordinary equitable remedy and should be granted with great caution and only in clear cases of fraud or mistake.").

The master concluded:

While I find [Leinbach] breached its lease with [Magnolia], I further find that [Magnolia's] failure to utilize the area in question amounted to an abandonment of that part of the demised premises which resulted in a mutual mistake of fact—both parties were unaware that the "wooded area" was contained within the demised premises at the time that either lease was entered into. I further find that this abandonment occurred prior to [Leinbach]'s breach of the

express terms of the lease by again renting part of the demised premises."

Initially, we note that neither party, at trial or on appeal, contends they made a mutual mistake. Furthermore, we find the preponderance of evidence in the record does not support a finding of mutual mistake at the time the contract was formed with respect to whether the wooded area was included in the 1.21 acres constituting the demised premises.

William Cochran, Jr. was operations manager for Baker Motors from 1993 until 2004 and negotiated the lease with Leinbach. He indicated the lease included the wooded area for a total of 1.21 acres even though it was not feasible to develop the area for parking at that time and testified as follows:

Q. Do you recall why, if you look at the sketch there, why you didn't put any parking over in the corner, off the cul-de-sac?

A. I was responsible for expense control. When this opportunity came and we decided to go with it, I wanted to get as many parking places as we could at the least amount expense of turning dirt. As they referred to it, that was a soccer field. It was compacted, that whole area. That was the easiest place to put it. I don't recall exactly, that's why that area was used and that's why this parking lot design was drawn. Over in the corner was an area that would've cost much more at the time to do. We had some trees to take down. We would have to fell and do that. We didn't need that at that time. And so the least expensive way I could turn this piece into a parking lot for us was what we did right there.

Q. Did you ever feel that precluded you from putting parking over there or something over there in the future?

A. I didn't think that it would preclude for anything because we had leased the entire parcel.

Additionally, Cochran testified he understood the rent proposed by Leinbach to be based upon its desire to make an 8 to 10% profit on its investment in the property, which would include the entire 1.21 acres. Corky Carnevale, Leinbach's real estate agent for securing the lease, testified the lease was for the entire 1.21 acres and corroborated Cochran's testimony

regarding the rent calculation. Tommy B. Baker, sole member of Magnolia, testified his goal in signing the lease was to get as many parking spaces as he economically could and to secure the total property, 1.21 acres.

At trial, Hiers, took the position that because the lease said Baker Motors could use the property for approved parking, he could erect the tower on the wooded area as Baker Motors was not using it for parking. He stated, *"[w]e have never denied that the parcel has been inadvertently leased to two people.* Again, I contend that Mr. Baker was not interfered with. He got exactly what he bargained for. He saved over $100,000 by not trying to develop that finger of land for a few additional parking spaces." Additionally, Hiers acknowledged the demised premises is 1.21 acres and that he leased all of parcel H–2 to Magnolia. Furthermore, Hiers testified that while Magnolia did not have the absolute right to expand the parking area, it could have done so with his permission and the approval of the City of Charleston.

Hiers testified he was not heavily involved in the placement of the cell tower. "I told [Optima's representative] my plate was full at the time. And if he wanted to pursue this opportunity, he was going to need to contact the city, Mr. Baker, and everyone else, and he was responsible for getting this done if, in fact, that's what he wanted to do." This testimony indicates Hiers believed Baker had some interest in the property or there would be no need to contact him regarding the tower's construction. Hiers testified:

Q. You made the unilateral mistake and leased out a portion of the property that you had previously leased to Mr. Baker to Optima Towers?

A. Clearly that's why we are in court today.

We recognize Magnolia did not immediately object to the erection of the tower on the wooded area. However, that fact alone does not demonstrate by clear and convincing evidence that *at the formation of the lease* Magnolia did not intend to lease the entire 1.21 acre parcel. Baker testified he was not aware that a cell tower was going up "adjacent or on the property" and he was not contacted about the construction of the tower. The record does not reveal how often Baker was at the premises or whether he parks in the employee lot.

Furthermore, Cochran, the Baker employee most familiar with the terms of the lease, was not employed by Baker Motors at the time of the erection of the cell tower. Leinbach also owned the adjacent parcel of land and simple inattentiveness to the precise location of the tower could have resulted in its being built on the wooded area. This falls short of establishing clear and convincing evidence of an intent to have abandoned that portion of the property in 2003. Furthermore, the drawings relied upon by the master to create a mutual mistake through Magnolia's abandonment all depict the wooded area. Although parking spaces are not delineated in the wooded area, the land itself is included in the drawings and is in no way excluded from the terms of the lease. Additionally, Magnolia did not attempt to negotiate a lower rent based on the decision not to use the wooded area for parking.

Leinbach's mistake was unilateral and occurred three years after the signing of the Leinbach/Magnolia lease. While Magnolia did not object to the construction of the tower, that was a mistake that occurred *after* the inception of the lease and does not offer a basis for reformation.

Although reformation corrects a mistake between the written document and the actual intent of the contracting parties, it will not rewrite a contract simply because it has become less favorable to one party. Under the remedy of reformation, the law will not make a better contract than that which the parties themselves have seen fit to enter into, or will not alter it for the benefit of one party to the detriment of another.

Reformation is not available for the purpose of making a new and different contract for the parties but is confined to establishment of the actual agreement; thus, a court of equity cannot, and should not, undertake to make a new contract between the parties by reformation. Thus, a court may not substitute by reformation an agreement that it thinks is proper but to which the parties had never assented.

66 Am.Jur.2d *Reformation of Instruments* § 1 (2011) (footnotes omitted).

While reformation of the lease allowed the master to fashion an equitable remedy that is very appealing, the preponderance of the evidence does not demonstrate clearly and convincingly the parties made a mutual mistake of fact at the time of the formation of the lease regarding whether the wooded area was included in the demised premises. Consequently, we reverse the master's ruling as to mutual mistake and reformation.

### III. Damages and Magnolia's Breach of the Lease

■ Because we conclude the master erred in reforming the contract, we look to the damages provision in the lease to determine the result of Leinbach's breach and whether Magnolia breached the lease by abating rent. Section 6.03 discusses abatement of rent and provides:

> If Landlord creates a condition that *substantially interferes with the normal use* of the Demised Premises or appurtenant parking or service areas as allowed herein, the Rent and other charges due hereunder shall be abated during the time such interference persists, but such abatement persists.... (emphasis added).

The master concluded the tower was not a substantial interference with the normal use of the demised premises, and evidence in the record supports that finding. Consequently, Magnolia breached the lease by failing to pay the agreed upon rent, and Leinbach is entitled to payment of those funds.

■ Additionally, although we conclude Leinbach breached the lease, Magnolia's proof as to damages was only speculative and does not support an award of actual damages. Baker testified as follows:

Q. And the tower that's there has not interfered at all with any of the parking on any of the sites?

A. For the time being, yes.

Q. Your testimony is, basically, you just really don't know what the future brings?

A. I don't think anybody does.

....

Q. You don't know that it would make any economic sense [to expand parking into the wooded area]?

A. That would be for a future determination.

Q. You haven't run any numbers to see if it would make any economic sense?

A. There's no need for the moment.

While we do not condone the "double-leasing" of property, it appears the construction of the cell tower was based on a unilateral mistake by Leinbach further exacerbated by Magnolia's apparent failure to file a notice of lease or recognize at the time of the tower's construction it was being built within the demised premises. The basic law of damages in our jurisprudence requires proof of damages, and we can find no case law that suggests double-leasing, particularly in a commercial transaction, gives rise to damages per se.

> Speculative damages are damages that depend upon future developments which are contingent, conjectural, or improbable. As a general rule, courts will find that all damages must be susceptible of ascertainment with a reasonable degree of certainty, and that uncertain, contingent, or speculative damages cannot be recovered in any action ex contractu or ex delicto.

> The inability to measure damages with definite exactness does not make them speculative and does not bar recovery. The general rule is the same, whether the plaintiff seeks lost profits in a contract case or future medical expenses in a tort case: damages must be proved with reasonable, not mathematical, certainty, and no award can be made for speculative or conjectural damages.

> Thus, where future injury is only merely possible, rather than probable, or where the amount is speculative rather than reasonably certain, the plaintiff cannot recover.

11 S.C. Jur. *Damages* § 5 (1992) (footnotes and quotation marks omitted).

As previously discussed, although the use of the demised premises was not completely limited to parking, any other use was subject to Leinbach's approval and any expansion of the parking area was subject to approval from Leinbach and the City of Charleston.

Because Magnolia's normal use of the property was not substantially interfered with, it was not entitled to abate rent under section 6.03 of the lease. Therefore, it must pay

Leinbach the rent that was previously abated, but Magnolia is entitled to nominal damages for Leinbach's breach.

## IV. Unjust Enrichment

 Magnolia further appeals the master's denial of its unjust enrichment claim contending the master erred in finding Leinbach's enrichment was not "unjust." We disagree.

 "A party may be unjustly enriched when it has and retains benefits or money which in justice and equity belong to another." *Dema v. Tenet Physician Servs.-Hilton Head, Inc.,* 383 S.C. 115, 123, 678 S.E.2d 430, 434 (2009). "To recover restitution in the context of unjust enrichment, the plaintiff must show: (1) he conferred a non-gratuitous benefit on the defendant; (2) the defendant realized some value from the benefit; and (3) it would be inequitable for the defendant to retain the benefit without paying the plaintiff for its value." *Inglese v. Beal,* 403 S.C. 290, 297, 742 S.E.2d 687, 691 (Ct.App. 2013).

In the instant case, an express contract exists covering the issue of abatement of rent—the relief sought by Magnolia. However, because of the unusual circumstances of this case, in which the express contract arguably does not address the type of breach at issue, we address Magnolia's unjust enrichment argument. *See Boldt Co. v. Thomason Elec. & Am. Contractors Indem. Co.,* 820 F.Supp.2d 703, 707 (D.S.C.2007) ("While parties are permitted under South Carolina law to pursue quasi-contractual claims when there is no valid contract between parties, or there is some question as to whether contract is enforceable or applies to dispute, when parties agree that valid and enforceable contract exists that covers dispute between them, such claim is superfluous.").

Magnolia claims Leinbach is being unjustly enriched by Optima's monthly rent payment. However, Magnolia failed to demonstrate it is entitled to that money. While Magnolia may have had the opportunity to sublease the wooded area to a tenant, any sublease was subject to Leinbach's approval and did not exist as a matter of right. In fact, the record demonstrates Hiers's consent to a sublease for the tower construction would have been questionable at best. Hiers testified the Optima lease was incredibly beneficial to him

because it could offset the failure of the Charleston Montessori School to timely pay its rent. Additionally, the construction of the cell tower was a matter of public concern and debate because of its proximity to the school. Therefore, the record suggests Leinbach's agreement to the tower, in the face of public controversy, was because of the benefit *Leinbach* would receive from the Optima lease and was not given simply as a matter of course. Accordingly, Magnolia was not entitled to the lease payments, and it is not unjust or inequitable for Leinbach to retain them.

## V. Remaining Issues

Finally, Magnolia contends the master erred in calculating the arrearages it owed Leinbach under the reformed lease and in not granting Magnolia attorney's fees. Because of our ruling as to damages and reformation, these issues need not be addressed. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address any remaining issues if the determination of a prior issue is dispositive).

## CONCLUSION

In conclusion, we hold the master erred in reforming the lease between Leinbach and Magnolia based on mutual mistake. Furthermore, we find that although Leinbach breached the lease agreement by permitting erection of the tower within the demised premises, Magnolia failed to prove it was entitled to rent abatement under the lease or restitution based on its unjust enrichment claim. We remand this case to the master to determine the amount of damages due to Leinbach and for the entry of nominal damages to Magnolia in light of our decision.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

WILLIAMS and LOCKEMY, JJ., concur.